**Julie Ann CLARK, Plaintiff,**

v.

**VIRGINIA BOARD OF BAR EXAMINERS, Defendant.**

**Civ. A. No. 94–211–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Feb. 23, 1995.

Victor M. Glasberg, Alexandria, VA, for plaintiff.

Peter R. Messitt, Asst. Atty. Gen., Richmond, VA, for defendant.

## MEMORANDUM OPINION

CACHERIS, Chief Judge.

The issue before the Court is whether a question appearing on the Virginia Board of Bar Examiners' "Applicant's Character and Fitness Questionnaire" addressing an applicant's history of mental or emotional disorders violates the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.* (1994). Following a preamble explaining that the Virginia Board of Bar Examiners is concerned only with "severe forms of mental or emotional problems," Question 20(b) asks: "Have you within the past five (5) years been treated or counselled for any mental, emotional or nervous disorders?" If Question 20(b) is answered affirmatively, applicants must then give specific treatment information pursuant to Question 21.

For the reasons set forth below, the Court finds that Question 20(b) is framed too broadly and violates the Plaintiff's rights under the Americans with Disabilities Act. Accordingly, judgment is entered in favor of the Plaintiff and the Virginia Board of Bar Examiners is enjoined from requiring that future applicants answer Question 20(b).

## I. FINDINGS OF FACT

Plaintiff Julie Ann Clark brings this action against the Virginia Board of Bar Examiners (the "Board") to have Question 20(b) stricken from the Board's "Applicant's Character and Fitness Questionnaire" (the "Questionnaire") because it violates the Americans with Disabilities Act (the "ADA"). The Board maintains that Question 20(b) is posed appropriately and is necessary to identify applicants with mental disabilities that would seriously impair their ability to practice law and protect their clients' interests. The Court, after reviewing the evidence, authorities and argu-

ments of counsel, makes the following findings of fact.[1]

## A. The Parties to the Case

Plaintiff Julie Ann Clark, a resident of Virginia, graduated from George Mason University Law School in June of 1993. She is currently employed as a children's program specialist at the Bazelon Center for Mental Health Law. During law school, Ms. Clark worked as a law clerk for the National Senior Citizens' Law Center, the American Bar Association Commission on Mental Disabilities, and the law firm of Landsman, Eakes & Laster. Additionally, Ms. Clark worked at various times as a paralegal for Legal Services of Northern Virginia and Virginia Legal Aid, and held several positions at the Loudon County Abused Women's Shelter.

Ms. Clark suffers from a condition previously diagnosed as "major depression, recurrent". Plaintiff's Exhibit 68(a).[2] Because the details of Ms. Clark's condition were disclosed in an affidavit filed under seal, they are not reviewed here. In an unsealed affidavit, Ms. Clark avers that, as a result of her condition, she "effectively lost much of [her] ability to concentrate, act decisively, sleep properly, orient [her]self, and maintain ordinary social relationships." Pl.Ex. 68(a). This condition, which occurred a few years ago, affected her for thirteen months.

The Virginia Board of Bar Examiners, an entity created under the authority of Virginia Code § 54.1–3919 (1994), is responsible for the examination of applicants for licenses to practice law in Virginia. Under Va.Code § 54.1–3925.1(A), the Board must determine, prior to licensing, that each applicant is a "person of honest demeanor and good moral character, is over the age of eighteen and possesses the requisite fitness to perform the obligations and responsibilities of a practicing attorney at law." The Board makes this determination "from satisfactory evidence produced by the applicant in such form as the board may require." Id. As a precondition to licensure, the Board requires that applicants answer all of the questions contained in its Questionnaire, including Question 20(b).

Pursuant to its authority under Va.Code § 54.1–3922, the Board promulgated rules governing the admission of bar applicants. Section III of these Rules, titled Character Requirements, explains that the burden is on the applicant to produce evidence satisfactory to the Board that he or she possesses the requisite fitness to perform the obligations of a practicing attorney. Def.Ex. 4. The stated purpose of the character and fitness review is to ensure the protection of the public and safeguard the system of justice. Id. The revelation or discovery of characteristics suggesting a lack of fitness to practice law, including evidence of mental or emotional instability, may be treated as cause for further inquiry by the Board.[3] Id. The appli-

---

1. The complicated procedural history of this case is worthy of a brief review: On July 11, 1994, the Court granted Defendants' motion for summary judgment after concluding that the Court lacked subject matter jurisdiction and that Plaintiff lacked standing to bring suit under the ADA. On August 31, 1994, pursuant to a motion to reconsider, the Court vacated the July 11 Order and held that jurisdiction and standing were proper in this case. At that time, the Court struck Plaintiff's request for an injunction requiring the Board to grant her a license to practice law. On November 3, 1994, the Court denied Defendants' second motion for summary judgment with respect to the Board, but granted summary judgment with respect to Defendant W. Scott Street, III. Because of a conflict with the Court's schedule, the case was continued from November 22, 1994 until January 18, 1995, at which time a two-day bench trial was held.

2. Herein, Plaintiff's Exhibits are referred to as Pl.Ex. and Defendant's Exhibits are referred to as Def.Ex.

3. Rule III(2) lists sixteen factors which may be treated as cause for further inquiry by the board, including: (A) commission or conviction of a crime; (B) violation of the honor code of the applicant's college or university, law school, or other academic misconduct; (C) making false statements or omissions, including failing to provide complete and accurate information concerning the applicant's past; (D) misconduct in employment; (E) other than honorable discharge from any branch of the armed service; (F) acts involving dishonesty, fraud, deceit or misrepresentation; (G) abuse of legal process; (H) neglect of financial responsibility; (I) neglect of professional obligations; (J) violation of an order of a court; (K) evidence of mental or emotional instability; (L) evidence of an existing and untreated drug or alcohol dependency; (M) denial of ad-

cation does not, however, inquire into physical disabilities which may impair one's ability to practice law.

## B. *Application for Admission to the Virginia State Bar*

On or about December 13, 1993, Plaintiff completed the Questionnaire and filed it with the Board. Plaintiff declined to answer Questions 20(b) and 21 of the Questionnaire on the grounds that they violated Title II of the ADA.[4] Question 20(b) and 21, and the preamble introducing these questions, read as follows:

The Board is required to assess effectively the fitness of each applicant to perform the obligations and responsibilities of a practicing attorney at law. In this regard, a lawyer's chemical dependency or untreated or uncontrolled mental or emotional disorders may result in injury to the public. Questions 20 and 21 request information essential to the Board's assessment. The members of the Board recognize that stress of law school, as well as other life factors, frequently result in applicants seeking psychiatric or psychological counseling. The Board encourages you to obtain counseling or treatment if you believe that you may benefit from it. Because generally only **severe** forms of mental or emotional problems will trigger an investigation or impact on bar admission decisions, your decision to seek counseling should not be colored by your bar application. . . .

\* \* \* \* \* \*

20. (b) Have you within the past five (5) years, been treated or counselled for a mental, emotional or nervous disorders?

\* \* \* \* \* \*

21. If your answer to question 20(a), (b) or (c) is yes, complete the following that apply:

(a) Dates of treatment or counseling;

(b) Name, address and telephone number of attending physician or counselor or other health care provider;

(c) Name, address and telephone number of hospital or institution;

(d) Describe completely the diagnosis and treatment and the prognosis and provide any other relevant facts. You may attach letters from your treating health professionals if you believe this would be helpful.

*See* Pl.Ex. 1 (emphasis in original).

On February 8, 1994, the Board advised Ms. Clark that her refusal to provide relevant information would prevent her from taking the bar examination. Pursuant to agreement of counsel, the Board subsequently agreed to allow Ms. Clark to sit for the February bar examination without answering Questions 20(b) and 21 of the Questionnaire. However, the Board indicated that it would not grant her a license until she completed the Questionnaire.

Ms. Clark took the Virginia bar examination on February 22 and 23, 1994 and passed it. She completed all of the application procedures with the exception of answering Questions 20(b) and 21. The Board concedes that, but for her refusal to answer Questions 20(b), it has no reason to believe that Ms. Clark lacks the requisite character and fitness to practice law in Virginia. Pl.Ex. 6. As the only thing preventing Ms. Clark's licensure is her refusal to answer Question 20(b), the issue of whether Question 20(b)

---

mission to the bar in another jurisdiction on character and fitness grounds; (N) disciplinary action by a lawyer disciplinary agency or other professional disciplinary agency of any jurisdiction, including pending, unresolved disciplinary complaints against the applicant; (O) commission of an act constituting the unauthorized practice of law, or unresolved complaints involving allegations of the unauthorized practice of law; (P) any other conduct which reflects adversely upon the character or fitness of an applicant. *See* Def.Ex. 4. The questions contained in the

Questionnaire are designed to illuminate these other characterological factors.

4. The parties' arguments are addressed primarily to the propriety of Question 20(b). Question 21 is deemed to violate the ADA only to the extent that it expands upon Question 20(b). Thus, whether Question 21 violates the ADA independently of Question 20(b) is not a question before the Court. Accordingly, the Court will address Questions 20(b) and 21 simultaneously and not as independent issues.

violates the ADA is properly framed for the Court.

## C. *Application Procedures of the Virginia Board of Bar Examiners*

Prior to 1994, only non-resident applicants were required to provide mental health information as part of their application to the Virginia bar. These applicants completed the character and fitness questionnaire created by the National Conference of Bar Examiner's (the "NCBE"), which included a broad question on mental health.[5] Conversely, resident applicants and those enrolled in Virginia law schools could obtain fitness certification from their local circuit court judge or their law school dean. *See* Pl.Ex. 5. The procedure for resident applicants included no required disclosure of or inquiry into mental health status or counseling history.

For the February 1994 bar examination, the Board modified its practices to conform to Va.Code § 54.1–3925.1, which removed the ability of circuit court judges and law school deans to certify applicants' fitness to practice law. The Board developed a character and fitness questionnaire based in part on the NCBE's questionnaire. The Board modified the mental health question by explaining its purpose, in a preamble to Question 20, and by limiting the scope of inquiry to the last five years.

The Board reviews approximately 2,000 applications per year. Because it lacks the resources to review all of these applications in-depth, the Board relies on the self-reporting of verifiable facts to obtain relevant information about each applicant. The Board sends the applications to the NCBE, which prepares a character and fitness report on each applicant. The NCBE verifies all of the answers to the Questionnaire, including Question 20(b). To verify an affirmative answer to Question 20(b), the NCBE inquires from the health care professional disclosed in

Question 21 whether the information disclosed is true.

After preparation of the character and fitness report, the NCBE returns the applications and verifying information to the Board for reevaluation. Upon receipt from the NCBE, employees of the Board review and mark the applications for items that may be pertinent to applicants' character and fitness, such as convictions, unpaid debts, job terminations, drug or alcohol use, mental health counseling, and institutionalization. *See also* Footnote 3, *supra.*

The Secretary–Treasurer of the Board, Mr. W. Scott Street, III, reviews the marked applications and decides which should be brought to the attention of the full Board for further examination. Although neither Mr. Street nor any member of the Board has any training in psychiatric or psychological problems, Pl.Ex. 9, the Board assesses the disclosed mental health information to determine whether further investigation is warranted. The Board has broad authority to conduct additional hearings to determine an applicant's fitness, and to subpoena witnesses and documents at such hearings. Va.Code § 54.1–3925.1 and 3925.3. In the twenty-three years Mr. Street has served as the Secretary–Treasurer, he has never brought to the attention of the Board an application disclosing the mere receipt of treatment or counseling for stress, depression, or marital or adjustment problems. Further, no applicant has been denied the right to sit for the bar examination based on their answer to Question 20(b).

In the last five years, forty-seven applicants have answered "yes" to Questions 20(b) or its predecessor, Question 28 of the NCBE's questionnaire. Of these forty-seven applicants, only two cases warranted further inquiry by the Board. In those two cases, the Board asked each applicant to provide letters from current health care providers stating that they were fit to practice law.[6]

---

**5.** Question 28 asked: "Have you ever been treated or counseled for any mental, emotional or nervous disorder or condition?"

**6.** One applicant had a bipolar disorder, had attempted suicide, and was voluntarily hospitalized on numerous occasions. The applicant's refusal

to take prescribed medications resulted in further institutionalization. Upon receipt of a letter from the health care provider stating that the applicant had gained insight into the nature of the disease, was in compliance with a plan of treatment, and was fit to engage in the practice of law, the applicant was licensed. The second

Both applicants provided the requested letters, but, because one applicant failed the bar examination, only one applicant was licensed by the Board.

Unlike the practice in some other states, the Board does not grant conditional licenses to practice law. Although licensed attorneys are subject to certain ethical constraints, the Board cannot impose requirements, such as continued counseling or treatment, as a condition to licensing. As the Board lacks any ability to ensure the mental fitness of applicants post-licensure, it must identify and screen out the unfit applicants prior to licensing. The Board avers that Question 20(b) is essential to the identification of such unfit applicants.

### D. Battle of the Experts

Plaintiff maintains that Question 20(b) must be rejected because it is overbroad and is ineffectual in identifying those applicants unfit to practice law. Plaintiff offered the testimony of Dr. Howard V. Zonana, Director of the Law and Psychiatric Division and Professor of Clinical Psychology at the Yale University School of Medicine, to support its contention that there is no correlation between past mental health counseling and fitness to practice law. Dr. Zonana testified that Question 20(b) elicits information that, unlike evidence of past behavior, is unrelated to applicants' present ability to practice law and has little or no predictive value. According to Dr. Zonana, there is little evidence to support the ability of bar examiners, or even mental health professionals, to predict inappropriate or irresponsible future behavior based on a person's history of mental health treatment. Dr. Zonana believes that evidence of past behavior, as elicited by the Board's other "characterological" questions, provides the best indicator of an applicant's

present ability to function and work.[7] *See* Record at 84–87.

The credibility of Dr. Zonana's position is supported by its consistency with the position of the American Psychiatric Association (the "APA"). According to the APA, psychiatric history should not be the subject of applicant inquiry because it is not an accurate predictor of fitness. The APA offers the following guidelines for mental health inquiry by licensing boards, regulatory agencies, and training programs:

1. Prior psychiatric treatment is, per se, not relevant to the question of current impairment. It is not appropriate or informative to ask about past psychiatric treatment except in the context of understanding current functioning. A past history of work impairment, but not simply of past treatment or leaves of absence, may be gathered.

2. The salient concern is always the individual's current capacity to function and/or current impairment. Only information about current impairing disorder affecting the capacity to function as a physician, and which is relevant to present practice, should be disclosed on application forms. Types of impairment may include emotional or mental difficulties, physical illness, or dependency upon alcohol or other drugs.

3. Applicants must be informed of the potential for public disclosure of any information they provide on applications.

Pl.Ex. 16. The Guidelines' focus on current ability to function, versus prior history of treatment or counseling, echoes the testimony offered by Dr. Zonana. Plaintiff contends that, unlike the guidelines offered by the APA, Question 20(b) is framed to identify mental or emotional illnesses that do not currently affect the applicant.

---

applicant was diagnosed with a manic depressive disorder and refused to acknowledge the existence of the problem. Untreated, the applicant engaged in irrational behavior such as spending money wildly. Although the applicant provided the requested letter attesting to his mental fitness, the applicant failed the bar exam.

**7.** Unlike mental health questions, "characterological" or "behavioral" questions are those

questions which are designed to elicit information about applicants' character from evidence of past behavior (e.g. work experience, military service, academic achievements, etc.). Most of the questions on the Questionnaire are behavioral or characterological in nature. *See* Pl.Ex. 1. The Court uses the terms "characterological" and "behavioral" interchangeably.

In support of maintaining Question 20(b), the Board offered the testimony of Dr. Charles B. Mutter, a psychiatrist, assistant professor of Psychiatry and Family Medicine at the University of Miami School of Medicine, and member of the Florida Board of Bar Examiners from 1989 to 1993. Dr. Mutter, drafter of a question similar to Question 20(b) included in Florida's bar application, testified that Question 20(b) is appropriate as posed. He stated that attorneys, as protectors of clients' rights and assets, hold a special position of trust with the public which must be safeguarded with mental health pre-screening. Record at 171–72. Further, Dr. Mutter insisted that broad mental health questions are essential for collecting complete information regarding applicants' fitness to practice law. Narrower mental health questions, in Dr. Mutter's view, are inadequate because they allow applicants to filter their responses and provide self-promoting answers. *Id.* at 177.

Dr. Mutter's immoderate position, however, is unsupported by objective evidence and is discordant with a contemporary understanding of mental health questions under the ADA. For one, Dr. Mutter was unable point to any evidence proving a correlation between mental health questions and an inability to practice law. Despite this absence of correlative evidence, Dr. Mutter expressed the view that broad psychological pre-screening should be used in other professions, such as medicine, banking, law enforcement, and firefighting. Record 192. Significantly, Dr. Mutter's somewhat extreme advocacy of mental health inquiry is controverted by the official position of the APA, a fact of which Dr. Mutter, an APA member, was unaware. Further, Dr. Mutter's position has been rejected by the Florida Board of Bar Examiners which, pursuant to a settlement agreement in *Ellen S. v. Florida Board of Bar Examiners, et al.*, 859 F.Supp. 1489 (S.D.Fla. 1994), struck the mental health question drafted by Dr. Mutter.[8] Accordingly, the Court finds that, although both doctors have impressive *curricula vitarum,* Dr. Zonana's position is more credible and persuasive than that of Dr. Mutter.

### E. *Need for Inquiry into Mental Health*

The Court accepts that an attorney's uncontrolled and untreated mental or emotional illness may result in injury to clients and the public. This conclusion is supported by the recent cases of acute mental disability among lawyers which have resulted in license suspensions by the Virginia State Bar. *See* Def.Ex. 8–15. Dr. Zonana acknowledged that there are many mental illnesses which may adversely affect, or even preclude, a person's ability to practice law. *See* Record at 48–58. He also indicated that, while responses to behavioral questions are better indicators of mental health, inquiry into an applicant's mental health is necessary for a complete evaluation of their fitness to practice law. *Id.* at 62–66.[9] Thus, it is clear from the facts before the Court that, at some stage in the application proceeding, some form of mental health inquiry is appropriate.[10]

---

8. Question 29 of the Florida Bar, as drafted by Dr. Mutter, formerly read:

   a. Have you ever consulted a psychiatrist, psychologist, mental health counselor or medical practitioner for any mental, nervous or emotional condition, drug or alcohol use?
   b. Have you ever been diagnosed as having a nervous, mental or emotional condition, drug or alcohol problem?
   c. Have you ever been prescribed psychotropic medication?

   These inquiries were replaced by a narrower mental health question which is reviewed in footnote 15, *infra.*

9. According to Dr. Zonana, mental health inquiry may be appropriate as a second stage of the application proceedings. Dr. Zonana testified that an applicant's fitness to practice law should be assessed from other characterological inquiries first and, where the results suggest some mental disorder, should be followed up with a second stage of mental health inquiries. Record at 71.

10. While some would suggest that mental health questions might be stricken entirely from bar applications, *see e.g.* Mary Elizabeth Cisneros, Note, *A Proposal to Eliminate Broad Mental Health Inquiries on Bar Examination Applications: Assessing an Applicant's Fitness to Practice Law by Alternate Means,* 8 Geo.J.Legal Ethics 401–37 (1995), it is unnecessary for the Court to embrace this position for the disposition of this case.

## F. *Efficiency of Question 20(b)*

Assuming that a mental health question is allowed under the ADA, the Court must determine whether Question 20(b) is a permissible mental health inquiry. Although characterological questions elicit useful information about past behaviors likely to shed light on applicants' fitness, the Board insists that it is necessary to probe applicants' mental health with Question 20(b). Conversely, Ms. Clark maintains that the question is objectionable because it is intrusive without being effective.

According to testimony presented by both Plaintiff and Defendant, approximately twenty percent of the population suffers from some form of mental or emotional disorder at any given time. *See* Record at 30 and 213–214.[11] However, despite reviewing some 2000 applications per year, the Board has received only forty-seven affirmative answers to its mental health questions in the past five years.[12] This affirmative response rate, or "hit" rate, of less than one percent is far below the expected rate of twenty percent. The Board has presented no evidence to suggest, nor is there any reason to believe, that bar applicants are not reflective of the general population. Thus, the great discrepancy between the Board's hit rate and the reported percentage of persons suffering from mental impairment indicates that Question 20(b) is ineffective in identifying applicants suffering from mental illness.

Notwithstanding its receipt of forty-seven affirmative responses, the Board has never denied a license on the basis of prior mental health counseling. Pl.Ex. 5. Although the Virginia State Bar has suspended attorneys for mental disability, *see* Def.Ex. 8–15, the Board is unable to point to a single instance where an affirmative answer to Question 20(b) has prevented licensure. Thus, based on the Board's own experience, Question 20(b) has failed to serve its purpose of preventing the licensure of applicants lacking the fitness to practice law.

## G. *Deterrent Effect*

In addition to being ineffectual, Plaintiff argues that Question 20(b) has a deterrent effect which inhibits applicants from getting necessary mental health counseling or treatment. Plaintiff presented the deposition testimony of Dean Paul M. Marcus, Acting Dean and Professor of Law at the Marshall–Wythe School of Law at the College of William and Mary, and Philip P. Frickey, Professor of Law at the University of Minnesota Law School, on the deterrent effect of broad mental health questions, like Question 20(b). Drawing on his experience counseling law students as both a teacher and administrator, Dean Marcus concluded that questions such as Question 20(b) deter law students from seeking counseling or treatment from which they might otherwise benefit. Similarly, Professor Frickey stated that broad mental health questions like Question 20(b) have a strong negative effect upon many law students, often discouraging them from seeking beneficial mental health counseling. Pl.Ex. 69.

The declarations of Messrs. Marcus and Frickey were echoed by the testimony of Drs. Zonana and Mutter, both of whom acknowledged the deterrent effect of broad mental health questions. Record at 43–44, 75, 232–33. The Board tacitly acknowledges this danger when, in its preamble to Question 20, it warns "your decision to seek counseling should not be colored by your bar application." While the Board's warning may be intended to assuage applicants' fears, it is

---

11. Dr. Zonana, relying on a study by Drs. Darrel A. Regier and William E. Narrow, *The de Facto U.S. Mental and Addictive Disorders Service System*, 50 Arch. of Gen. Psych. 85–94 (1993), testified that approximately twenty-two percent of the population suffers from some form of mental or emotional disorder at any given time. Record at 30. Similarly, Dr. Mutter offered two estimates, placing the figure between seventeen and twenty-five percent. *Id.* at 213–214.

12. Notwithstanding its receipt of 47 affirmative responses, the Board has never denied a license on the basis of prior mental health counseling. Plaintiff's Exhibit 5. Although the Virginia State Bar has suspended attorneys for mental disability, *see* Defendant's Exs. 8–15, the Board is unable to point to a single instance where an affirmative answer to Question 20(b) has prevented licensure. Thus, Question 20(b) has failed to serve its purpose of preventing the licensure of applicants lacking the fitness to practice law.

uncertain that applicants, intimidated by the bar application process, heed such advice.

Additionally, broad mental health questions may inhibit the treatment of applicants who do seek counseling. Faced with the knowledge that one's treating physician may be required to disclose diagnosis and treatment information, an applicant may be less than totally candid with their therapist.[13] Without full disclosure of a patient's condition, physicians are restricted in their ability to accurately diagnose and treat the patient. Thus, it is possible that open-ended mental health inquiries may prevent the very treatment which, if given, would help control the applicant's condition and make the practice of law possible.

## H. *Data from other Jurisdictions and Authorities* [14]

The imposition of mental health questions like Question 20(b) is not unique to Virginia. All fifty states and the District of Columbia have moral character qualifications which applicants are required to demonstrate as a condition of admission to the bar. Not all of these jurisdictions inquire into applicants' mental health, however, and many states inquire only into hospitalization or institutionalization for mental illness. The various approaches of the bar examiners in the other forty-nine states' can be broken down as follows:

- Two (2) states, Arizona and Massachusetts ask no mental health questions;

- Five (5) states have recently stricken their mental health questions. These include: Hawaii, Illinois, New Mexico, Pennsylvania and Utah.[15]

- Ten (10) states and the District of Columbia ask only about hospitalization or institutionalization for mental impairment or illness. The states include: California, Georgia, Iowa, Kansas, Louisiana, Montana, New Hampshire, New Jersey, South Dakota, and Vermont.[16]

13. The Court recognizes that the "Applicant's Character and Fitness and Questionnaire" remains confidential and is not available to the public. Va.Code § 54.1–108(2). However, as the Board is made up of practicing attorneys, applicants may be reluctant to disclose mental or emotional problems to a group who, at some level, comprise the applicants' peers and colleagues.

14. The Court takes judicial notice of the information contained in this section. Although most of this data was supplied by the parties, some data was supplied by disinterested third-parties. This information is included merely to frame Question 20(b) vis-a-vis other states' mental health inquiries, and is not a factor in evaluating the propriety of Question 20(b).

15. These states formerly asked: **Hawaii** ("37. During the past ten (10) years, have you ever been treated for any mental, emotional or nervous disorders? 38. Have you ever been voluntarily or involuntarily committed to an institution for mental, emotional or nervous disorders?"); **Illinois** ("11.j. During the past ten years, have you been treated or counseled for any mental, emotional, nervous, or behavioral disorder or condition? 11.k. During the last ten years, have you voluntarily entered or been involuntarily admitted to an institution for treatment of a mental, emotional, nervous, or behavioral disorder or condition ...?"); **New Mexico** ("18. Have you ever been a patient in any sanitarium, hospital or mental institution for the treatment of a mental illness?"); **Pennsylvania** ("B. Mental Impairments: ___ Mental Retardation, ___ Emotional Ill-

ness, ___ Specific Learning disabilities, ___ Other (specify). Describe your disability below. In addition, please provide documentation on the attached corresponding form from your treating physician(s) or therapist(s) of your diagnosis and prognosis, date of onset, and current mental condition, based on an examination conducted within the past year."); and **Utah** ("15. Have you ever ben a patient in any sanitarium, hospital or mental institution for the treatment of a mental illness? 21. Have you ever been adjudicated an incompetent person, an insane person or a lunatic by any court?").

16. **California** ("13.8. In the last two years, have you ever voluntarily entered or been involuntarily admitted to an institution for treatment of a mental, emotional or nervous disorder/condition ...? 13.9. In the last two years, have you ever been adjudged an incompetent or a conservatee, or have any proceedings ever been brought against you for such purpose?"); **District of Columbia** ("26. During the past five years have you voluntarily entered or been involuntarily admitted to an institution for treatment of a mental, emotional, or nervous disorder or condition?"); **Georgia** ("30. Have you been admitted to a hospital or other health care facility for treatment of any mental or emotional illness within the last five years? 31. Have you ever been declared legally incompetent?"); **Iowa** ("38. Have you ever been adjudicated a mentally-ill, mentally-impaired, or mentally-incapacitated person, or been committed to a hospital or institution for treatment of a mental, emotional, or nervous disorder?"); **Kansas** ("15.c. Have you

- Thirty-two (32) states ask broad questions concerning treatment or counseling for mental and emotional disorder or illness. These thirty-two states are further divided into two groups:

  - One (1) state, Arkansas limits inquiry to continuous treatment for mental or emotional disorder.[17]

ever been hospitalized or institutionalized for reasons of mental health? 15.d. Have you ever been adjudged a mentally incapacitated or disabled person or placed under guardianship or conservatorship, or declared a ward of the Court, for any reason?"); **Louisiana** ("20. Have you ever been hospitalized in either a private or public institution because of any mental condition or disorder?"); **Montana** ("9. Have you ever been a patient in a sanitarium, hospital, or mental institution for the treatment of a mental illness?"); **New Hampshire** ("11. Are you now or have you ever been a party to any suit in equity, action at law, suit in bankruptcy or other statutory proceeding, matter in probate, incompetency, guardianship, or any other civil judicial or administrative proceeding of any kind?"); **New Jersey** ("XIV. Have you, since your last Statement to the Committee, been: Hospitalized or institutionalized for the treatment of emotional, mental or nervous disorders?"); **South Dakota** ("15.(b) Have you ever been declared a ward of any court, or adjudged an incompetent, or a conservatee, or have any proceedings ever been brought for such purposes, or have you ever been committed to any institution?"); and **Vermont** ("Have you ever been a voluntary or involuntary patient at a sanitarium, hospital or institution for the treatment of mental illness? Have you ever been adjudged to be insane or an incompetent person by any court?").

17. **Arkansas** ("9.(f). Are you now or have you ever suffered from or been treated for any mental illness which resulted in hospitalization or institutionalization, or required continuous treatment for a period of one (1) year or more?").

18. **Alabama** ("43.(a) In the past 5 years, have you received treatment for a serious nervous, emotional or mental illness which would adversely impact upon your ability to practice law?"); **Alaska** ("18. Have you ever had any disability or undergone treatment for any health problem that may have a bearing on your fitness to practice law (e.g. alcoholism or mental illness)?"); **Connecticut** ("Since you became a law student, have you ever had an emotional disturbance, mental illness or physical illness which has impaired you ability to practice law or to function as a student of law?"); **Delaware** ("28.a. At any time during the last ten years have you been diagnosed as having, or received treatment for, any of the following: bipolar or major depressive mood disorder, schizophrenia, paranoia or other psychotic disorder, kleptomania, pathological or com-

- Thirteen (13) states limit their question to specific diagnoses or ask applicants if they have any mental disorder which they believe will affect their ability to practice law. This group includes: Alabama, Alaska, Connecticut, Delaware, Florida, Idaho, Maine, Maryland, Minnesota, New York, Rhode Island, Texas, and Washington.[18]

pulsive gambling, pedophilia or exhibitionism? b. Do you currently (as hereinafter defined) have a mental health condition (not reported above) which in any way impairs or limits, or if untreated could impair or limit, you ability to practice law in a competent and professional manner? ... 'Currently' means any time which is recent enough that it could have an impact on your ability to function as an attorney."); **Florida** ("27.a. During the last ten (10) years, have you been hospitalized or have you consulted a professional or have you received treatment or a diagnosis from a professional for any of the following: Schizophrenia or any other psychotic disorder, Bipolar or Major Depressive mood disorder, Antisocial Personality disorder, drug or alcohol abuse, Kleptomania, Pathological or Compulsive Gambling, Pedophilia, Exhibitionism, Voyeurism? 27.b. Do you currently (as hereinafter defined) have a mental health condition (not reported above) which in any way impairs or limits, or if untreated could impair or limit, your ability to practice law in a competent and professional manner? ... 'Currently' means recently enough so that the condition may have an ongoing impact on one's functioning as a licensed attorney."); **Idaho** ("32. Have you ever had any mental health condition which might impair your ability to engage in the practice of law?"); **Maine** ("32. Have you ever been diagnosed or treated for the following conditions or disorders, or do you currently suffer from any of the following conditions or disorders: A. Pedophilia, exhibitionism, or other sexual behavior disorder that may affect your interaction with the public; B. Compulsive gambling, kleptomania, or pyromania...."); **Maryland** ("17. Have there been any circumstances or unfavorable incidents in your life, whether in school, college, law school, business or otherwise, which may have a bearing upon your character or your fitness to practice law, not called for by the questions contained in this questionnaire or disclosed in your answers? If so, give full details, including any assertions or implications of dishonesty, misconduct, misrepresentation, mental or emotional disability, financial irresponsibility, and disciplinary measures imposed (if any) by attaching a supplemental statement."); **Minnesota** ("4.28. Do you have, or have you had in the past 2 years, a mental illness, an emotional condition or a learning disability which in any way impairs or limits your ability to practice law?"); **New York** ("Attachment A. (1) Do you have any physical, men-

- Eighteen (18) states which ask broad mental health questions like Question 20(b). These include: Colorado, Indiana, Kentucky, Michigan, Mississippi, Missouri, Nebraska, Nevada, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, South Carolina, Tennessee, West Virginia, Wisconsin and Wyoming.[19]

In the wake of the passage of the ADA, which became effective for public entities in January 1992, the inclusion of mental health questions on bar applications has gained new significance. At least eight states, including Connecticut, Florida, Maine, Minnesota, New York, Pennsylvania, Rhode Island and Texas, have recently altered their mental health questions in light of potential or actual litigation under the ADA.

The changes in these states are reflected in similar adjustments in the policies of the American Bar Association ("ABA") and the NCBE, two leading national legal organizations. In August 1994, the House of Delegates of the American Bar Association ("ABA") adopted a recommendation that:

when making character and fitness determinations for the purpose of bar admission, state and territorial bar examiners, in carrying out their responsibilities to the public to admit only qualified applicants worthy of the public trust, should consider the privacy concerns of bar admission applicants, tailor questions concerning mental

tal or emotional condition that could adversely effect your capability to practice law?"); **Rhode Island** ("29.(b) Are you now or have you within the past five (5) years been diagnosed as having or received treatment for an emotional disturbance, nervous or mental disorder, which condition would impair your ability to practice law?"); **Texas** ("11.a. Within the last ten (10) years, have you been diagnosed with or have you been treated for bi-polar disorder, schizophrenia, paranoia, or any other psychotic disorder?"); and **Washington** ("I. Have you ever experienced, or undergone treatment for any psychiatric problem, or for alcohol or drug dependency during the past five years, that would interfere with your ability to practice law?").

19. **Colorado** ("39. During the last ten years, have you ever received a diagnosis, or treatment for, a mental, emotional, or nervous disorder?"); **Indiana** ("25. From the age of 16 years to the present, have you been treated for any mental, emotional or nervous disorder?"); **Kentucky** ("21. Have you ever been diagnosed or received regular treatment for amnesia, emotional disturbance, nervous or mental disorder?"); **Michigan** ("51.a. Have you ever had a mental illness, meaning a substantial disorder of thought or mood which significantly impaired your judgment, behavior, capacity to recognize reality, or ability to cope with ordinary demands of life, to such an extent that you required care and treatment for your own welfare or the welfare of others or of the community?"); **Mississippi** ("27. Have you suffered any type of psychiatric or psychological disorder which required treatment including hospitalization and/or the prescription of anti-psychotic medication?"); **Missouri** ("24. During the last ten years or during the period since you attained age 18 (whichever time is shorter), have you ever been treated or counseled for any mental, emotional or nervous disorder or illness?"); **Nebraska** ("17. Have you ever been treated or counseled for any mental, emotional or nervous disorder or condition?"); **Nevada**

("44. Have you ever been treated for mental or emotional illness, disease, incapacity or disorder of any kind or nature, or have you ever been committed to any institution, sanatorium or hospital for the treatment of such condition?"); **North Carolina** ("24.a. Have you ever received diagnosis of amnesia, or any form of insanity, emotional disturbance, nervous or mental disorder? 24.b. Have you ever received *REGULAR* treatment for amnesia, or any form of insanity, emotional disturbance, nervous or mental disorder?"); **North Dakota** ("28. Have you ever been treated or counseled for any mental, emotional or nervous disorder or condition?"); **Ohio** ("20.b. Have you ever been treated or counseled for any mental, emotional or nervous disorders?"); **Oklahoma** ("24. Have you ever been diagnosed or received treatment for any form of mental disorder, suffered from any mental illness, or been declared incompetent?"); **Oregon** ("13.n. During the past 7 years, have you received mental health counseling or treatment for symptoms or a condition that affected your ability to function on a day-to-day basis?"); **South Carolina** ("19.d. Have you ever received treatment for amnesia, or any form of insanity, emotional disturbance, or mental disorder?"); **Tennessee** ("13.b. During the past ten (10) years, have you ever been treated for any mental, emotional or nervous disorder?"); **West Virginia** ("50.a. Have you ever had a mental illness, meaning a substantial disorder of thought or mood which significantly impaired your judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life, to such extent that you required care and treatment for your own welfare or the welfare of others or the community?"); **Wisconsin** ("29. Have you been treated for any mental illness or severe emotional disturbance during the past five years?"); and **Wyoming** ("28. Have you ever been treated or counseled for any mental, emotional or nervous disorder or condition?").

health and treatment narrowly in order to elicit information about current fitness to practice law, and take steps to ensure that their processes do not discourage those who would benefit from seeking professional assistance with personal problems and issues of mental health from doing so. Proposal 110, A.B.A. House of Delegates (August 9, 1994). While not the most strongly worded admonition, the resolution represents an acknowledgement of the changing atmosphere under the ADA.

Recently, the NCBE has acted to change the mental health questions on its character and fitness questionnaire. Formerly, questions 28 and 29 of the NCBE's character and fitness application asked, respectively: "Have you ever been treated or counseled for any mental, emotional or nervous disorder or condition?" and "Have you ever voluntarily entered or been involuntarily admitted to an institution for treatment of a mental, emotional or nervous disorder or condition?" These questions formed the basis for many states' mental health questions, including Virginia. As of February 17, 1995, the NCBE altered its mental health questions to limit their scope and to more sharply focus on chronic mental conditions which affect the ability to practice law.[20] While the actions of the NCBE and ABA are not binding on the states, they signify the substantial impact the ADA is having on the formulation of mental health inquiries.

## II. CONCLUSIONS OF LAW

Title II of the Americans with Disabilities Act prohibits discrimination against disabled persons by public entities. 42 U.S.C. §§ 12101 *et seq.* (1994). It provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. A "public entity" is defined as "any department, agency . . . or other instrumentality of a State . . .

government." 42 U.S.C. § 12131(1)(B). The Virginia Board of Bar Examiners concedes that it is a public agency within this definition.

A "qualified individual with a disability" is defined as "[a]n individual with a disability who, with or without reasonable modification to rules, policies, or practices . . . meets the essential eligibility requirements for the receipt of services or participation in programs or activities provided by the public entity." 42 U.S.C. § 12131(2). Under regulations promulgated by the Department of Justice, pursuant to 42 U.S.C. § 12134, "disability" is further defined as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual; a record of such impairment; or being regarded as having such an impairment." 28 C.F.R. § 35.104. "Major life activities" include "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Id.*

The Court finds, based on the affidavit Plaintiff filed under seal, that Ms. Clark is a person with a disability or, alternatively, a person with a past record of impairment within the meaning of the ADA. 42 U.S.C. § 12102(2); 28 C.F.R. § 35.104. Further, Ms. Clark has shown that she can meet the essential eligibility requirements of practicing law and is "a qualified person with a disability" under the ADA. 42 U.S.C. § 12131(2); 28 C.F.R. § 35.104. While Defendant argues that Ms. Clark is not an "otherwise qualified individual" because she failed to answer Question 20(b), this argument begs the question of whether Question 20(b) must be answered at all.

An applicant may not meet the essential eligibility requirements, however, where they "pose[ ] a direct threat to the health or safety of others." 28 C.F.R. pt. 35, app. A at 446. A determination that a person poses a "direct threat"[21] must be based not on generalizations or stereotypes, but on:

20. Although NCBE President Erica Moeser indicated that these changes have been approved by the NCBE, the new questions were not available in final form at the time of this opinion. Ms.

Moeser expected the NCBE to distribute the new questions in early March, 1995.

21. Defined as a "significant risk to the health or safety of others that cannot be eliminated by

an individualized assessment, based on reasonable judgment that relies on current medical evidence or on the best available objective evidence to determine: the nature, duration, and severity of the risk; the probability that potential injury will actually occur; and whether reasonable modification of policies, practices and procedures will mitigate the risk.

*Id.* at 446. The Board has presented no evidence to suggest that all or most of the applicants answering Question 20(b) affirmatively threaten the health or safety of the public. Nor is there any evidence that the Board engaged in any individualized assessment in formulating Question 20(b) as called for by 28 C.F.R. pt. 35, app. A at 446. Absent a showing that Ms. Clark would pose a direct threat to the health or safety of others, the Court finds that Ms. Clark meets all of the "essential eligibility requirements" for admission to the bar of the Commonwealth of Virginia.

■ In addition to the general provisions of Title II, public entities are specifically prohibited from acting discriminatorily in administering licensing programs. 28 C.F.R. § 35.130(b)(6). This regulation provides:

A public entity may not administer a licensing or certification program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability, nor may a public entity establish requirements for the programs or activities of licensees or certified entities that subject qualified individuals with disabilities to discrimination on the basis of disability....

28 C.F.R. § 35.130(b)(6). Further, 28 C.F.R. § 35.130(b)(8) forbids a public entity from:

impos[ing] or apply[ing] eligibility criteria that screen out or tend to screen out any individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program or activity being offered.

modification of policies, practices, or procedures, or by the provision of auxiliary aids or

*Id.* As a public licensing agency, the Board must comply with the strict requirements of 28 C.F.R. §§ 35.130(b)(6) and (8) in probing applicants' mental health histories.

In assessing the propriety of Question 20(b), the Court is faced with two issues: (1) whether the Board has established requirements or imposed eligibility criteria that subject qualified individuals to discrimination on the basis of their disability, and (2) whether such requirements or criteria are necessary to the Board's licensing function.

A. *Question 20(b) Subjects Qualified Individuals with a Disability to Discrimination on the Basis of that Disability*

■ To find a violation of the ADA, the Court first must determine whether the Board, in posing Question 20(b), subjects persons with disabilities to discrimination on the basis of their disability. While it is not clear that Question 20(b) "screens out" potential applicants, it is clear that Question 20(b) imposes an additional burden on applicants with disabilities to satisfy additional eligibility criteria. *See Ellen S. v. Florida Board of Bar Examiners,* 859 F.Supp. 1489, 1494 (S.D.Fla.1994) (Florida's mental health questions "discriminate against Plaintiffs by subjecting them to additional burdens based on their disability."); *Medical Society of New Jersey v. Jacobs,* 1993 WL 413016, * 7 (D.N.J.1993) (mental health questions imposed extra burdens on qualified persons with disabilities in violation of ADA); *In re Applications of Underwood and Plano,* No. BAR–93–21, 1993 WL 649283 at * 2 (Me. Dec. 7, 1993) (requirement that applicants answer mental health questions discriminates on the bases of disability and imposes eligibility criteria that unnecessarily screen out individuals with disabilities).

Unlike other applicants, those with mental disabilities are required to subject themselves to further inquiry and scrutiny. The Court finds that this additional burden discriminates against those with mental disabilities. Thus, to avoid violating the ADA, the Board must show that Question 20(b) is nec-

services." 28 C.F.R. pt. 35, app. A at 446.

essary to the performance of its licensing function.

## B. *Necessity of Imposing Question 20(b)*

██ "The practice of law is not a matter of grace, but of right for one who is qualified by his learning and his moral character." *Baird v. State Bar of Arizona*, 401 U.S. 1, 8, 91 S.Ct. 702, 707, 27 L.Ed.2d 639 (1971). It is generally accepted that a state can set high standards of qualification and, to this end, may investigate an applicant's character and fitness to practice law. *See Schware v. Board of Bar Examiners of New Mexico*, 353 U.S. 232, 239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957); *Martin–Trigona v. Underwood*, 529 F.2d 33, 38 (7th Cir.1975); *Hawkins v. Moss*, 503 F.2d 1171, 1175 (4th Cir.1974). It is equally clear that all states have set qualifications of moral character as preconditions for admission to the practice of law, with the burden of demonstrating good character borne by the applicant. *See Konigsberg v. State Bar of California*, 366 U.S. 36, 41 n. 4, 81 S.Ct. 997, 1002 n. 4, 6 L.Ed.2d 105 (1961). While the Board's broad authority to set licensing qualifications is well established, such authority is subject to the requirements of the ADA.

### 1. *Duty to assess the character and fitness of applicants*

██ The Board is charged with a statutory duty to find, prior to licensure, that each applicant has the "requisite fitness to perform the obligations and responsibilities of a practicing attorney at law." Va.Code § 54.1–3925.1. As part of this duty, the Board must identify those people who suffer from mental conditions which would severely affect or impair their ability to practice law.

██ The Board contends that, in fulfilling this duty, it is necessary to ask Question 20(b) to uncover all of the skeletons hidden in each applicant's psychological closet. Further, the Board opines that its ability to investigate applicants' character and fitness is limited by inadequate resources and time constraints. According to the Board, Question 20(b) is necessary because it enables the Board to identify potentially unfit applicants with the limited resources and time available to it. While the Court recognizes that the Board has limited resources with which to discharge its duty under Va.Code § 54.1–3925.1, the Court finds such limitations do not make Question 20(b) "necessary" under the ADA.

### 2. *Decisions in other jurisdictions*

Other courts, considering broad mental health questions similar to Question 20(b), have concluded that such inquiries would violate Title II of the ADA. *See Ellen S.*, 859 F.Supp. at 1494 (court stated, in *dicta*, that licensing board's broad inquiry into applicants' mental health would violate Title II);[22] *Medical Society of New Jersey*, 1993 WL 413016 (court concluded, in *dicta*, that licensing agency's question "have you ever suffered or been treated for any mental illness or psychiatric problem" violates ADA); *Underwood*, No. BAR–93–21, 1993 WL 649283 at * 2 (bar examiner's inquiry into diagnosis and treatment for emotional, nervous or mental disorders, and accompanying medical authorization form, violates ADA).[23] "Although it is certainly permissible for the Board of Bar Examiners to fashion other questions more directly related to *behavior* that can affect the practice of law without violating the ADA, the questions and medical authorization objected to here are contrary to the ADA" *Underwood*, 1993 WL 649283 at

---

**22.** The *Ellen S.* court considered the mental health questions reviewed in footnote 8, *supra*. *See* 859 F.Supp. at 1491 n. 1. These questions, originally drafted by Dr. Charles Mutter, were stricken by the Florida Board of Bar Examiners as part of a settlement of the *Ellen S.* litigation. Florida's revised mental health questions appear in footnote 18, *supra*.

**23.** The *Underwood* court considered questions 29 and 30 of the Maine bar application which asked,

respectively: "Have you ever received diagnosis of an emotional, nervous or mental disorder?" and "Within the ten (10) year period prior to the date of this application, have you ever received treatment of emotional, nervous or mental disorder?" As a result of the *Underwood* litigation, the Maine Board of Bar Examiners revised its mental health inquiry. The new questions are reviewed at footnote 18, *supra*.

\* 2 (emphasis in original). While not binding authority, these cases offer persuasive guidance in the evaluation of Question 20(b) under the ADA.

In support of maintaining Question 20(b), the Board relies on *Applicants v. Texas State Board of Bar Examiners*, No. 93 CA 740SS, 1994 WL 776693 (W.D.Tex. October 10, 1994), which upheld the right of the Texas Board of Bar Examiners to inquire into an applicant's mental history. Unlike Question 20(b), however, the questions considered in *Texas State Board of Bar Examiners* were addressed only to specific behavioral disorders found relevant to the practice of law.[24] Further, the *Texas State Board of Bar Examiners* court noted that the mental health question used by the Texas Board of Bar Examiners before 1992, which asked "[h]ave you within the last ten (10) years ... [b]een examined or treated for any mental, emotional or nervous conditions," was "revised ... to comply with the ADA." *Id.* at 4. Hence, the *Texas State Board of Bar Examiners* decision has limited application and does not support the breadth of inquiry posed by the Board.[25]

Hence, recent decisions in other jurisdictions support the conclusion that the ADA restricts licensing boards' freedom to inquire into mental health background. Even *Texas State Board of Bar Examiners*, which upheld the Texas bar examiners' mental health inquiry, indicates that a broader mental health inquiry might violate the ADA. Consequently, the Board's position that Question 20(b) is necessary to the performance of its licensing function is unsupported by any of the cases which have addressed this issue.

### 3. Other mental health questions insufficient

The Board avers that Question 20(b) is necessary because a more restricted mental health question would be ineffective in identifying the characteristics necessary for a determination of applicant fitness. The Board maintains that a narrower question, however posed, would be underinclusive.

According to the Board, a mental health question limited to certain listed diagnoses would be incomplete because it would fail to include non-diagnosed applicants or those with unlisted diagnoses. Further, a list-based question would be inadequate because of the impossibility of creating a comprehensive list of diagnoses. *See* 28 C.F.R. pt. 35, App. A at 443 ("It is not possible to include a list of all of the specific conditions ... that would constitute ... mental impairments because of the difficulty of ensuring the comprehensiveness of such a list."); *see also* Record at 57–59, 68 (testimony of Dr. Zonana that more than thirty mental disorders exist and admitting that a question listing diagnoses would not be a good solution).

Similarly, the Board objects to questions which yield to applicants the determination of whether a mental or emotional condition would affect their fitness to practice law.[26] The Board argues that placing this determination with the applicant allows them to certify their own fitness. A broad mental health question, however, prevents the self-filtering

---

**24.** The *Texas State Board of Bar Examiners* court reviewed question 11 of the bar application which asked:
(a) Within the last ten years, have you been diagnosed with or have you been treated [for] bipolar disorder, schizophrenia, paranoia, or any other psychotic disorder?
(b) Have you, since attaining the age or eighteen or within the last ten years, whichever is shorter, been admitted to a hospital or other facility for the treatment of bipolar disorder, schizophrenia, paranoia, or any other psychotic disorder?
The *Texas State Board of Bar Examiners* court concluded that these inquiries did not violate the ADA because they narrowly addressed only those disorders relevant to the practice of law. *Id.* at 24.

**25.** The United States, appearing before the Court as *amicus curiae*, argues that the *Texas State Board of Law Examiners* decision is wrong to the extent that it allowed even limited inquiry into "severe" mental disabilities. The United States argues that the diagnoses listed are unnecessary classifications that violate title II of the ADA. However, as this issue is not properly before the court, it is unnecessary to reach the merits of such an argument.

**26.** For example, Alaska asks: "Have you ever had any disability or undergone treatment for any health problem that may have a bearing on your fitness to practice law? (e.g. alcoholism or mental illness)." *See e.g.* Footnote 18, *supra*.

or self-promotion applicants might otherwise exercise in answering such questions. Record at 177. Because a more limited question would be either incomplete or overly yielding, the Board insists that Question 20(b) is necessary to fulfill its duty of assessing applicants' fitness to practice law.

The Defendant's argument, however, lacks objective support and does not justify the imposition of Question 20(b). As Question 20(b) has been unsuccessful in identifying applicants with mental disabilities, it is difficult to imagine other mental health questions, however posed, being more ineffectual. Even if Question 20(b) were better at eliciting mental health information, a fact the Board fails to prove, this would not compel the Court to find that Question 20(b) is "necessary" under the ADA. Thus, the Board's argument can be rejected as unsupported factually and unpersuasive legally.

### 4. *Deterrent and stigmatic effect*

Ms. Clark argues that Question 20(b) is objectionable because it is overinclusive and has adverse deterrent and stigmatic effects. According to Plaintiff, Question 20(b) is overbroad in that it burdens mentally disabled applicants without effectively identifying those applicants who are unfit to practice law. Further, the imposition of Question 20(b) has the adverse effect of deterring mental health treatment and stigmatizing those who do seek treatment.

Plaintiff avers that Question 20(b), while burdening all mentally disabled applicants, offers no marginal utility over the other behavioral questions posed on the Questionnaire. Neither the Board nor its expert, Dr. Mutter, presented any evidence of correlation between positive answers to Question 20(b) and otherwise undisclosed mental illnesses. The extremely small number of applicants answering Question 20(b) affirmatively, compared with the comparatively large percentage of the population suffering from mental illnesses at any given time, at-

tests to the practical ineffectiveness Question 20(b).

The only corollary evidence presented by the Board was the "anecdotal study of applications which discussed issues pertaining to mental health" of Mr. James P. Newes, an employee of the Minnesota Board of Law Examiners. Newes Dep. at 9. Mr. Newes found nine cases in which positive answers to Minnesota's mental health question revealed information which otherwise would have remained hidden. However, the results of the Newes study alone cannot be extrapolated to provide substantive support for the effectiveness of Question 20(b). For one, much of the extreme behavior of the nine study cases would have been revealed by the characterological questions contained in the Board's Questionnaire.[27] Further, Newes' survey pool is too small to support broad generalizations regarding the effectiveness of mental health questions. Hence, the Newes study offers little support for the proposition that, but for Question 20(b), the Board would be unable to identify applicants with mental disabilities so severe that they are unfit to practice law.

Conversely, Plaintiff presented considerable evidence of the stigmatizing and inhibiting effect of broad mental health questions. The imposition of Question 20(b) both amplifies the stigmatization of disabled persons and, at the same time, deters the counseling and treatment from which such persons could benefit. Requiring applicants to answer Question 20(b), especially considered in relation to the preceding and succeeding questions regarding drug or alcohol addiction and hospitalization for mental illness, suggests that those answering affirmatively are somehow deficient or inferior applicants. Further, by the admission of Mr. Street, Question 20(b) may be overbroad in that it elicits unnecessary and unintended mental health information. Record at 165.

In addition to being overbroad, there is ample support, from the testimony of Drs.

27. Five of the applicants had been hospitalized or institutionalized because of mental problems or alcohol abuse; two suffered from alcohol or drug abuse; and one was involved in a shooting and spent time in jail as a result. This informa-

tion would have been revealed by truthful answers to the characterological questions on the Board's Questionnaire, even excluding Question 20(b).

Zonana and Mutter, Dean Marcus, and Professor Frickey, for the conclusion that Question 20(b) deters applicants from seeking mental health counseling from which they might otherwise benefit. Thus, it is apparent that the costs of administering Question 20(b) are not justified by the insignificant results it achieves.

## III. CONCLUSION

■ On the basis of the record produced at trial, the Court easily reaches the conclusion that question 20(b) is too broad and should be rewritten to achieve the Board's objective of protecting the public. Question 20(b)'s broadly worded mental health question discriminates against disabled applicants by imposing additional eligibility criteria. While certain severe mental or emotional disorders may pose a direct threat to public safety, the Board has made no individualized finding that obtaining evidence of mental health counseling or treatment is effective in guarding against this threat.

In fact, the Board presented no evidence of correlation between obtaining mental counseling and employment dysfunction. Question 20(b), while offering little marginal utility in identifying unfit applicants, has strong negative stigmatic and deterrent effects upon applicants. Both Drs. Zonana and Mutter acknowledged this deterrent effect and testified that past behavior is the best predictor of present and future mental fitness. Thus, the Board has failed to show that Question 20(b) is necessary to the performance of its duty to license only fit bar applicants.

As the Court's job in this case is to decide whether 20(b) complies with the ADA, not to draft a question that would comply with the ADA, the Court will refrain from offering any *dictum* guidance. The imposition of Question 20(b) by the Board violates the ADA. 42 U.S.C. § 12132; 28 C.F.R. §§ 35.130(b)(6) and (8). While the licensure of attorneys implicates issues of public safety, the Board has failed to show that Question 20(b), as posed, is necessary to the Board's performance of its licensing function. Accordingly, judgment is entered for the Plaintiff and the Virginia Board of Bar Examiners is enjoined from requiring that fu-

ture applicants answer Question 20(b) of the Questionnaire.

An appropriate Order shall issue.

## ORDER

For the reasons put forth in the accompanying Memorandum Opinion, it is accordingly ORDERED:

(1) that the Virginia Board of Bar Examiners is enjoined from requiring that applicants for admission to the Virginia bar answer Question 20(b) of its "Character and Fitness Questionnaire."