ELLEN S., Annabel R., Katherine F. and Sally M., Plaintiffs,

v.

The **FLORIDA BOARD OF BAR EXAMINERS, John Moore, Executive Director of the Florida Board of Bar Examiners, in his official capacity, and the Florida Supreme Court, in its capacity as a rulemaking body for the Florida Bar, Defendants.**

No. 94–0429–CIV.

United States District Court, S.D. Florida.

Aug. 1, 1994.

Defendant Montgomery on May 27, 1989. Nothing in the transcript alters the conclusion reached here.

Susan Stefan, Coral Gables, FL, Nina Vinik, American Civil Liberties Union Foundation of Florida, Inc., Miami, FL, James Green, West Palm Beach, FL, Parker Thomson, Miami, FL, Sheila Foran, U.S. Dept. of Justice, Civil Rights Div., Public Access Section, Washington, DC, for plaintiffs.

Peter Zinober, Tampa, FL, Linda Quillen, Office of the Atty. Gen., Tallahassee, FL, for defendants.

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS and SUPPLEMENTAL MOTION TO DISMISS

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes before the Court on Defendants' Motion to Dismiss (D.E. # 17) and Defendants' Supplemental Motion to Dismiss or in the Alternative Motion for Summary Judgment (D.E. # 35). Plaintiffs filed responses to the motions and Defendants filed reply memoranda. The United States has filed a brief as *amicus curiae* in support of Plaintiffs' position. The Advocacy Center for Persons with Disabilities, Inc., filed a separate *amicus* brief on behalf of Plaintiffs. Oral argument was held on July 1, 1994.

### I. Factual Summary

Plaintiffs, who wish to be admitted to the Florida Bar, claim that certain inquiries of

the Florida Board of Bar Examiners (the "Board") violate the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213. Specifically, Plaintiffs challenge (1) question 29 on the application to the Florida bar, which asks whether an applicant has ever sought treatment for a nervous, mental, or emotional condition, has ever been diagnosed as having such a condition, or has ever taken any psychotropic drugs;[1] (2) the consent form on the application requiring that applicants authorize the release of any and all mental health records and waive all confidentiality as to the content of the consultations; (3) the letter of inquiry routinely sent by the Board to all past treatment professionals; and (4) the Board's follow-up investigations and hearings.

In the application process, an affirmative answer to any of the three sections of question 29 automatically triggers a requirement that the applicant identify and provide the address of each individual consulted for the condition, and that the applicant indicate the beginning and ending dates of consultation. Each applicant is required to execute "Authorization and Release" forms, authorizing the release of all records of any sort and waiving all rights to confidentiality. Without this waiver, the Board will not process an application. (Complaint ¶ 19).

The Board, as a matter of routine, sends to each of the health professionals named by the applicant a letter containing questions about the applicant's treatment history. (Complaint ¶ 18). The Board's investigation may extend beyond the letter of inquiry, and the Board may, in its discretion, hold a hearing for the applicant to respond to further questions about her history of mental health treatment. (Complaint ¶ 20).

An applicant who has at some time in the past consulted a mental health professional may not practice law in Florida unless he or she agrees to reveal to the Board the fact of that consultation and any and all details of such consultation that the Board deems appropriate. (Complaint ¶ 19).

Plaintiffs claim that question 29 and the related forms and procedures violate Title II of the ADA, which prohibits discrimination against the disabled by state and local governments, and instrumentalities thereof. They have filed a Motion for Preliminary Injunction, seeking to enjoin the Board from requiring that an applicant answer the question, waive his rights to confidentiality in his mental health records, and submit to the additional inquiries associated with a positive response to question 29.

## II. Legal Standard for Motion to Dismiss

This Court is generally reluctant to grant motions made under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss a complaint for failure to state a claim upon which relief can be granted. The liberal pleading rules embraced by Rule 8 of the Federal Rules require only that a complaint set forth a generalized statement of facts from which a defendant will be able to frame a responsive pleading. Fed.R.Civ.P. 8; *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). However, where there exists an insuperable bar to relief, the normal factors counseling a court to deny a motion to dismiss are not present. *United States v. Uvalde Consol. Indep. School Dist.*, 625 F.2d 547, 549 n. 1 (5th Cir.1980), *cert.*

---

1. Question 29 of the application to the Florida Bar reads as follows:

   29. **Consultation with Psychiatrist, Psychologist, Mental Health Counsellor or Medical Practitioner**

   a. ____ Yes ____ No Have you ever consulted a psychiatrist, psychologist, mental health counselor or medical practitioner for any mental, nervous or emotional condition, drug or alcohol use? If yes, state the name and complete address of each individual you consulted and the beginning and ending dates of each consultation.

   b. ____ Yes ____ No Have you ever been diagnosed as having a nervous, mental or emo-

   tional condition, drug or alcohol problem? If yes, state the name and complete address of each individual who made each diagnosis.

   c. ____ Yes ____ No Have you ever been prescribed psychotropic medication? If·yes, state the name of each medication and the name and complete address of each prescribing physician. Psychotropic medication shall mean any prescription drug or compound effecting the mind, behavior, intellectual functions, perceptions, moods, or emotions, and includes anti-psychotic, anti-depressant, anti-manic and anti-anxiety medications.

*denied,* 451 U.S. 1002, 101 S.Ct. 2341, 68 L.Ed.2d 858 (1981)[2]; 5A Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1357 (1990) ("Wright & Miller").

■ A complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *SEC v. ESM Group, Inc.,* 835 F.2d 270, 272 (11th Cir. 1988), *cert. denied,* 486 U.S. 1055, 108 S.Ct. 2822, 100 L.Ed.2d 923 (1988) (quoting *Conley v. Gibson,* 355 U.S. at 45–46, 78 S.Ct. at 102). For the purpose of a motion to dismiss, the complaint is construed in the light most favorable to the plaintiff, and all facts alleged by the plaintiff are accepted as true. *Id.; see also Burch v. Apalachee Community Mental Health Serv., Inc.,* 840 F.2d 797, 798 (11th Cir.1988) (holding that in considering a motion to dismiss, a court must "take the material allegations of the complaint and its incorporated exhibits as true, and liberally construe the complaint in favor of the Plaintiff"), *aff'd sub nom., Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). There are a few exceptions to this rule, such as where the facts alleged are internally inconsistent or where they run counter to facts of which the court can take judicial notice. Wright & Miller, at § 1357. Conclusory allegations and unwarranted deductions of fact also need not be accepted as true. *Associated Builders, Inc. v. Alabama Power Co.,* 505 F.2d 97, 100 (5th Cir.1974). Likewise, a court is not bound to accept a plaintiff's legal conclusions. *Schatz v. Rosenberg,* 943 F.2d 485, 489 (4th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1475, 117 L.Ed.2d 619 (1992).

## III. Motion to Dismiss

Defendants move to dismiss Plaintiffs' Complaint pursuant to Fed.R.Civ.P. 12(b)(6) and provide three arguments in support of their Motion to Dismiss.[3] Defendants argue (1) that Florida law requires the challenged

inquiry into bar applicants' mental health treatment histories; (2) that Title II of the ADA, by its terms, does not prohibit the challenged inquiry and (3) that Defendants have not discriminated against Plaintiffs as a matter of law because (a) they have not denied Plaintiffs admission to the Florida Bar and (b) they have no actual knowledge of Plaintiffs' disabilities.

### A. Florida law cannot immunize Defendants from the ADA's restrictions.

■ Defendants contend that Florida law requires the Board to investigate each applicant's ability to practice law and that the information sought by question 29 is relevant to the Board's determination of an applicant's fitness to practice law. (Motion to Dismiss at 3–7). As support for this proposition, Defendants cite *Florida Board of Bar Examiners Re: Applicant,* 443 So.2d 71 (Fla.1983), which upheld the use of a precursor to question 29 on the basis that it was relevant to the Board's inquiry into an applicant's ability to practice law. *Id.* at 76. Defendants' reliance on *Bar Examiners* is misplaced because that case predates the ADA and because the Florida Supreme Court only considered whether question 29 violated the Florida and United States Constitutions. Defendants correctly state that the Board is authorized by state law to investigate an applicant's character and fitness. However, the Board is not permitted to conduct such investigation in violation of federal law. *See, e.g., Martinez v. California,* 444 U.S. 277, 284 n. 8, 100 S.Ct. 553, 558 n. 8, 62 L.Ed.2d 481 (1980) (conduct which is wrongful under § 1983 cannot be immunized by state law).

### B. Plaintiffs' Complaint does state a claim that Defendants' use of question 29 on the bar application violates Title II of the ADA.

■ Title II of the ADA prohibits discrimination by public entities. 42 U.S.C. § 12132 states that "no qualified individual with a disability shall, by reason of such disability,

---

2. In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedents all decisions of the former Fifth Circuit issued before October 1, 1981.

3. For a discussion of Defendants' Supplemental Motion to Dismiss, see *infra* Part IV.

be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." [4]

Defendants argue that Title II's general language does not extend the ADA to the Board's regulation and licensing of attorneys. Defendants buttress their argument by stating that because Title I of the ADA specifically prohibits employers from conducting pre-employment inquiries regarding disability [5] while Title II only generally prohibits discrimination by public entities, Title II does not proscribe the challenged inquiry at issue.

Defendants essentially provide an argument of statutory construction. It is unusual that Congress enumerated specific examples of discriminatory conduct in Titles I and III, but remained silent in Title II. Although the legislative history of the ADA is far from clear, the legislative history reveals that Congress deliberately chose "not to list all the types of actions that are included within the term 'discrimination', as was done in titles I and III." H.R.Rep. No. 485(II), 101st Cong., 2d Sess. 84 (1990), *reprinted in* 1990 U.S.C.C.A.N. 303, 367. Therefore, Defendants' statutory construction argument fails and the difference in wording between Titles I and III, on the one hand, and Title II, on the other, is less suspect.

Assuming arguendo that the general language of Title II alone does not govern the licensing and regulation of attorneys, Defendants' argument fails if the broad anti-discriminatory language of Title II is read in conjunction with the regulations promulgated by the Department of Justice pursuant to § 12134 of the ADA.[6]

The regulations directly apply Title II to the licensing and regulation of attorneys. 28 C.F.R. § 35.130(b)(6) prohibits a public entity from administering "a licensing or certification program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(8) restricts a public entity from imposing or applying "eligibility criteria that screen out an individual with a disability ... from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered." Another court which examined these regulations found that the regulations, which specifically address the state licensing procedures, are not " 'arbitrary, capricious or plainly contrary to statute.' " *Medical Society of New Jersey v. Jacobs*, Civ. A. No. 93–3670 (WGB), 1993 WL 413016, *8 (D.N.J. Oct. 5, 1993).

Thus, Plaintiffs have stated a claim that the Board's use of question 29 on the bar application violates Title II if the language of Title II is read in conjunction with the regulations promulgated thereunder.

*C. For Defendants to have discriminated against Plaintiffs in contravention of the ADA, Defendants neither need to deny Plaintiffs admission to the Florida Bar nor possess actual knowledge of Plaintiffs' disabilities.*

■ Defendants argue that no discrimination has occurred because Plaintiffs have not been denied licenses to practice law in Florida. However, as the Title II regulations make clear, question 29 and the subsequent

---

4. Plaintiffs' Complaint alleges that the four Plaintiffs are "qualified individuals with a disability." (Complaint ¶ 7). "Public entity" is defined as "any State or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. 12131. The Board falls within this definition of "public entity" and is therefore subject to the anti-discrimination provisions of 42 U.S.C. 12132.

5. Defendants further argue that if Title II is read to incorporate the restriction on pre-employment inquiries contained in Title I, then the challenged inquiry would be lawful at some point in the

licensing process. This argument is unavailing because the extent to which Title II incorporates Title I is unclear. *See Medical Society of New Jersey v. Jacobs*, Civ. A. No. 93–3670 (WGB), 1993 WL 413016, *10 (D.N.J. Oct. 5, 1993).

6. "Rather than outline the specific obligations of public entities under [Title II], the ADA directed the Department of Justice ("DOJ") to promulgate regulations ..." *Kinney v. Yerusalim*, 812 F.Supp. 547, 548 (E.D.Pa.), *aff'd*, 9 F.3d 1067 (3rd Cir.1993), *cert. denied*, — U.S. ——, 114 S.Ct. 1545, 128 L.Ed.2d 196 (1994).

inquiries discriminate against Plaintiffs by subjecting them to additional burdens based on their disability. An analysis of an analogous case, *Medical Society of New Jersey v. Jacobs,* reveals that denial of a license by a state licensing body is not a prerequisite to a finding of discrimination by that entity. The *Jacobs* court examined whether the Board of Medical Examiners' inquiries into applicants' mental health treatment histories violated the ADA. The court found the defendants' inquiry to be discriminatory because the questions were used as a screening device to "place additional burdens" on medical license applicants. *Id.* at *7. The questions [7] were problematic because "they substitute an impermissible inquiry into the status of disabled applicants for the proper, indeed necessary, inquiry into the applicants' behavior." *Id.* The court found that discrimination occurred well before the actual denial of medical licenses because "the extra investigation of qualified applicants" constituted "invidious discrimination under the Title II regulations." *Id.* at *8.

The Board can discriminate against qualified disabled applicants by placing additional burdens on them and this discrimination can occur even if these applicants are subsequently granted licenses to practice law.

■ Defendants also contend that actual knowledge of Plaintiffs' disabilities is a prerequisite to finding discrimination by Defendants in violation of the ADA. However, all cases cited by Defendants for this proposition fall either within Title I, other federal employment laws or federal civil rights laws. Defendants have not provided any support in the language of the statute or in the caselaw interpreting Title II to demonstrate that they must have actual knowledge of Plaintiffs' disabilities in order for Plaintiffs to prove discrimination.

## IV. Supplemental Motion to Dismiss or in the Alternative Motion for Summary Judgment

### A. The tenth amendment does not prohibit the application of the ADA to state bar licensing procedures.

Defendants argue that the application of Title II of the ADA to state bar examiners violates the tenth amendment of the United States Constitution because Congress allegedly did not express its intent to preempt state governance over the licensing of attorneys. Defendants assert that the regulation and licensing of attorneys is a "quintessential sovereign function of the states." (Supp.Motion to Dismiss at 2). Therefore, Defendants argue, Congress may legislate in this area only when acting pursuant to constitutionally granted power, such as the Commerce Clause or the fourteenth amendment. *Gregory v. Ashcroft,* 501 U.S. 452, 458–59, 111 S.Ct. 2395, 2400, 115 L.Ed.2d 410 (1990). Furthermore, Congress must demonstrate clear intent to regulate in an area traditionally under state control. *Id.*

■ Defendants argue that Congress has not demonstrated an intent to regulate the Board's licensing of bar applicants. However, the language of the statute demonstrates Congress' intent to regulate this type of activity.[8] Congress indicated that the ADA governs states by authority of both the Commerce Clause and the fourteenth amendment. *See* 42 U.S.C. § 12101(b)(4) (Congress intended "to invoke the sweep of Congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce," in order to prevent discrimination against persons with disabilities). Congress also expressly abrogated states' eleventh amendment sovereign immunity

7. The court found that it was not the actual questions themselves that were discriminatory under Title II, but rather the subsequent investigation that an affirmative answer triggered. *Jacobs* at *8. While the *Jacobs* court provided a thoughtful analysis, the holding that the questions themselves did not violate the ADA is questionable. Even if one accepted this flawed conclusion, the facts of the instant case provide a different result because an affirmative response

to the first part of question 29 automatically triggers subsequent questions and possible subsequent investigation.

8. 42 U.S.C. § 12101(b)(1) states that the ADA was enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *Id.*

with respect to ADA claims. *See* 42 U.S.C. § 12202.

Finally, the ADA does not completely preempt or displace Florida's procedure for licensing attorneys through the creation of a burdensome regulatory framework. *Cf. Pinnock v. International House of Pancakes,* 844 F.Supp. 574, 590 (S.D.Cal.1993) (finding that Title III of the ADA does not violate the tenth amendment because Title III's "statutory building scheme does not displace local building codes.") Rather, the ADA merely prohibits states from discriminating on the basis of disability.

Therefore, the tenth amendment does not restrict the application of Title II of the ADA to the Board's licensing of attorneys.

*B. The Court has jurisdiction to hear this matter; Clark v. Virginia Board of Bar Examiners is not controlling.*

■ In Defendants' Notice of Supplemental Authority, Defendants cite *Clark v. Virginia Board of Bar Examiners,* 861 F.Supp. 512 (E.D.Va.1994) for the proposition that this Court lacks subject matter jurisdiction.

The facts of Clark are quite similar to the instant case. In *Clark,* an individual plaintiff refused to answer two Virginia Bar application questions on the grounds that the questions violated Title II of the ADA. The questions inquired whether an applicant had sought mental health treatment within the past five years. The defendants moved for summary judgment and argued that the district court lacked subject matter jurisdiction because the case involved a judicial decision by the state supreme court. The *Clark* court granted defendants' motion for summary judgment and dismissed the case for lack of jurisdiction.

Although the facts in *Clark* are similar to this case, the Court questions the reasoning in *Clark. Clark* based its holding on two cases where individual plaintiffs challenged decisions by state bar examiners to reject applications for admission to the bar. The cases, *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) and *Woodard v. Virginia Board of Bar Examiners,* 454 F.Supp. 4 (E.D.Va.1978), *aff'd.,* 598 F.2d 1345 (4th Cir. 1979), demonstrate why *Clark* is not controlling.

> In *Feldman,* the Supreme Court stated: United States district courts, therefore, have subject-matter jurisdiction over general challenges to state bar rules, promulgated by state courts in nonjudicial proceedings, which do not require review of a final state-court judgment in a particular case. They do not have jurisdiction, however, over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional.

*Feldman,* 460 U.S. at 486, 103 S.Ct. at 1317. Thus, this Court has jurisdiction only over general challenges to state bar rules.

*Woodard,* which pre-dates *Feldman,* involved a bar applicant who failed the Virginia Bar examination and filed suit in district court alleging racial discrimination. The *Woodard* court dismissed the complaint for lack of subject matter jurisdiction because the plaintiff challenged an individual decision by the Virginia Board of Bar Examiners, rather than a rule of general application.

Plaintiffs in the instant case are challenging the Board's general rules and regulations [9] rather than the final determination by a state supreme court that an individual applicant is unfit to practice law, as was the case in both *Feldman* and *Woodard.* The Plaintiffs do not challenge a final adjudica-

---

**9.** Plaintiffs allege that they are challenging 1) the general rule that all applicants must answer Question 29 in order for their applications to be processed; 2) the general rule that law school deans and references will be asked about every applicant's mental disability; 3) the universal practice of requiring all applicants answering yes to Question 29 to waive confidentiality of their treatment records and history, and 4) the universal followup inquiry of treatment professionals with multiple, detailed questions about an applicant's treatment history.
(Pls.' Resp. Notice of Supplemental Authority at 2.)

tion on the merits by the Board denying them admission to the Florida Bar. Indeed, the Board has not even ruled on the Plaintiffs' qualifications to be admitted to the bar. Therefore, jurisdiction in this Court is proper.

### V.   Conclusion

Accordingly, after a careful review of the record, and the Court being otherwise fully informed, it is

ORDERED and ADJUDGED that Defendants' Motion to Dismiss (D.E. # 17) be, and the same is hereby, DENIED. It is further

ORDERED and ADJUDGED that Defendants' Supplemental Motion to Dismiss or in the Alternative Motion for Summary Judgment (D.E. # 35) be, and the same is hereby, DENIED. Defendants shall file an answer within 20 days from the date of this order.