**In re PETITION AND QUESTIONNAIRE FOR ADMISSION TO THE RHODE ISLAND BAR.**

**No. 93–246–MP.**

Supreme Court of Rhode Island.

Oct. 9, 1996.

Barbara Margolis, Character & Fitness Committee, Warwick, for Plaintiff.

Patricia Beede, ACLU, Newport (Justice) Sheila M. Foran, for Defendant.

## OPINION

LEDERBERG, Justice.

The Supreme Court's supervisory role over the practice of law includes oversight of the process by which applicants seek admission to the bar of this state. Sup.Ct.R. Art. II. Four questions on the Rhode Island Bar Application (application) were challenged by the American Civil Liberties Union–Rhode Island Affiliate (ACLU) after it received a complaint from an individual who apparently was in the process of filling out an application for admission to the Rhode Island Bar. The ACLU asserted that the questions violated the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 through 12213, and the privacy rights of applicants. In light of the challenge, the Committee on Character and Fitness of the Board of Bar Examiners (committee) petitioned the Supreme Court for instructions on how to proceed in respect to two of the challenged questions, specifically, question Nos. 26 and 29 of the application.[1] In response, this Court appointed a special master, Patricia Ryan Recupero, J.D., M.D. (master), with instructions to "gather relevant information and address any concerns regarding questions 26 and 29(a) and (b)." *In re Petition and Questionnaire for Admission to the Rhode Island Bar,* 658 A.2d 894, 895 (R.I.1995). This Court also directed the master "to receive

---

1. At the time the committee petitioned this Court, question Nos. 27 and 28 had been revised by the committee to the satisfaction of the ACLU.

input from members of the community whose interests may be affected and whose participation may better inform [the Court] as to the value and propriety of the queries." *Id.* at 896. Finally, the Court directed that, after garnering such input, the master "submit model questions to this court for review and approval." *Id.*

The completed report, Report of Special Master (June 28, 1996) (hereinafter report), was submitted to this Court, and on July 18, 1996, we issued an order inviting written comment on the report and assigned the matter for a public hearing on September 10, 1996.

After careful review of the findings and recommendations in the report, after review of briefs and statements of the committee and of amici curiae, and after deliberations following the public hearing, this Court hereby instructs the committee to adopt the reformulations of question Nos. 26 and 29(a) and (b) as proposed by the master. We decline to advise the adoption of the master's additional proposed questions and recommendations.

### Procedural History

The facts and the travel of this matter prior to the appointment of the master were set forth in *In re Petition and Questionnaire, Rhode Island Bar.* The current formulations of question Nos. 26 and 29(a) and (b) are as follows:

"26. Are you or have you within the past five (5) years been addicted to or dependent upon the use of narcotics, drugs, or intoxicating liquors or been diagnosed as being addicted to or dependent upon said items to such an extent that your ability to practice law would be or would have been impaired? YES ___ NO ___.

"If yes, please state the details, including dates and name and address of the individual who made the diagnosis if one was made.

" 'Ability to Practice Law' is to be construed to include the following:

(a) The cognitive capacity to undertake fundamental lawyering skills such as problem solving, legal analysis and reasoning, legal research, factual investigation, orga-

nization and management of legal work, making appropriate reasoned legal judgments, and recognizing and resolving ethical dilemmas, for example;

(b) The ability to communicate legal judgments and legal information to clients, other attorneys, judicial and regulatory authorities, with or without the use of aids or devices; and

(c) The capability to perform legal tasks in a timely manner."

"29(a) Have you ever been hospitalized, institutionalized or admitted to any medical or mental health facility (either voluntarily or involuntarily) for treatment or evaluation for any emotional disturbance, nervous or mental disorder? YES ___ NO ___. If yes, state the name and complete address of each hospital, institution or treatment facility; the dates of treatment or evaluation; and the name of each individual in charge of your treatment or evaluation.

_____

_____

"(b) Are you now or have you within the past five (5) years been diagnosed as having or received treatment for an emotional disturbance, nervous or mental disorder, which condition would impair your ability to practice law? YES ___ NO ___. If yes, explain, stating the name and complete address of each psychologist, psychiatrist, counselor or other medical practitioner who made such diagnosis or from whom you received treatment, and the relevant dates.

_____

_____

_____ "

Pursuant to our direction that the master receive input from members of the community, the master met with the committee and the ACLU on several occasions to discuss the possibility of resolving the issue by further revising the disputed questions. *Report* at 2. In addition, members of the public were invited to present both oral and written statements at a hearing on November 20, 1995, at

the Rhode Island Department of Health. *Id.* The master also surveyed the approaches that other jurisdictions have taken to this issue. *See, e.g., Clark v. Virginia Board of Bar Examiners,* 880 F.Supp. 430 (E.D.Va. 1995) (holding that Virginia bar-application question similar to question No. 29(b) violated ADA); *but see Applicants v. Texas State Board of Law Examiners,* No. A93 CA 740SS, 1994 WL 776693 (W.D.Tex. October 11, 1994) (upholding limited inquiry into whether applicant has been diagnosed with or treated for "bipolar disorder, schizophrenia, paranoia, or any other psychotic disorder"); *also see Ellen S. v. Florida Bd. of Bar Examiners,* 859 F.Supp. 1489 (S.D.Fla.1994) (holding that Florida bar-application question similar to question No. 29(b) violated ADA). In addition to setting forth findings and recommendations in her report to this Court, the master described the legal landscape created by the ADA and included background information on mental health and substance abuse. *Report* at 2–17. The report reached the conclusion that question Nos. 26 and 29(a) and (b) as currently formulated violate the ADA. The master revised the questions with the objective of comporting with the ADA. We note in this regard that the American Bar Association has recommended that bar examiners "tailor questions concerning mental health and treatment narrowly" and "take steps to ensure that their processes do not discourage those who would benefit from seeking professional assistance with personal problems and issues of mental health from doing so." Proposal 110, adopted by ABA House of Delegates (August 9, 1994).

The Court appreciates the briefs and comments[2] submitted by the committee; the ACLU; the United States Department of Justice, Civil Rights Division; the Rhode Island Department of Mental Health, Retardation, and Hospitals; the Rhode Island Mental Health Advocate; the Governor's Council on Mental Health; the Governor's Commission on the Handicapped; the Drug and Alcohol Treatment Association of Rhode Island; the Rhode Island Protection and Advocacy System, Inc.; the Alliance for the Mentally Ill of Rhode Island; the Manic Depressive and Depressive Association of Rhode Island; the National Association of Social Workers in Rhode Island; the Rhode Island Rape Crisis Center; the Rhode Island Psychiatric Society; the Rhode Island Council of Community Mental Health Centers, Inc.; the Newport County Community Mental Health Center, Inc.; The Northern Rhode Island Community Mental Health Center, Inc.; Howard Zonana, M.D., professor of psychiatry, Yale University; and several personal statements.

### Constraints Imposed by the ADA

The ADA was enacted to protect disabled Americans from discrimination. The act extends protection to "qualified" individuals who either have a physical or a mental impairment that substantially limits a major life activity or have a record of such an impairment. *Report* at 2–3. To qualify for such protection, an individual must meet the essential eligibility requirements for receipt of services or for participation in a public entity's program, activities, or services. An individual who poses a "direct threat" to the health or the safety of others will not be "qualified." A "direct threat" is defined as a significant risk that cannot be eliminated or reduced to an acceptable level by the modification of the public entity's policies, practices, or procedures or by the provision of auxiliary aids or services. *Report* at 4.

The public entity's determination that a person poses a direct threat to the public may not be based on generalizations or stereotypes about the effect of a particular disability. A public entity may not make unnecessary inquiries into the existence of a disability nor may it discriminate on the basis of a disability in its licensing, certification, and regulatory activities. During the hiring process, public entities may ask about an applicant's ability to perform job-related functions but may not ask whether an applicant is disabled or inquire into the nature or severity of an applicant's disability. *Report* at 4–5.

**2.** The Rhode Island Bar Association submitted a short letter stating that it takes no position on this issue.

■ We are persuaded that the procedures required for admittance to the bar are the functional equivalent of a hiring process and that the committee operates as the equivalent of an employer when it screens applicants. Thus, we concur with the master's conclusion that the ADA applies to State Bar admissions. Because question Nos. 26, 29(a), and 29(b) ask about the existence of a disability or treatment, these questions may be deemed to violate the ADA, absent a showing of a direct threat to public safety if persons with a mental or an emotional disability or history of substance-abuse treatment are admitted to the bar. *Report* at 6–7. Specifically, the burden is on those who propose to ask the questions to show an actual relationship such that (1) applicants with mental-health-and substance-abuse-treatment histories *actually* pose an increased risk to the public, (2) the admission process has effectively protected the public by using question Nos. 26, 29(a), and 29(b) to identify those persons with mental-health-or substance-abuse-treatment histories who are a danger to the public, or (3) attorneys who have become a danger to the public in their practice of law, when retrospectively reviewed, could have been identified with any degree of reliability by such questions. *Report* at 6–7.

### Relationship between Mental–Health or Substance–Abuse Treatment and the Ability to Practice Law

■ Research has failed to establish that a history of previous psychiatric treatment can be correlated with an individual's capacity to function effectively in the workplace. *Report* at 10. According to the report, there is no empirical evidence demonstrating that lawyers who have had psychiatric treatment have a greater incidence of subsequent disciplinary action by the bar or by any other regulatory body in comparison with those who have not had such treatment. *Id.* Moreover, most disciplinary problems and grievance issues arise after an attorney has been in practice for a number of years, and in nearly all such cases no indicators of future difficulty manifested themselves at the time of original licensure. *Id.* at 11. Finally, the initial screening in most bar-examining committees is performed by lay individuals with no mental-health training. As the master noted, even mental-health practitioners would experience difficulty in predicting with accuracy the future threat posed during a lifetime of practicing law, and she reported that almost half of all Americans who seek mental-health treatment do not have a diagnosable mental health problem. *Id.* at 9 (citing W.E. Narrow et al., *Use of Services by Persons with Mental and Addictive Disorders*, 50 Archives of Gen. Psychiatry 95 (1993)).

A study at the University of Maryland School of Law revealed that a large number of its students seek psychological counseling during their time in law school. *Report* at 9. Although "[a] few students questioned the implications for their bar application or for employment * * * they were usually reassured when they learned that these services were confidential and could not be reported to professional authorities." *Id.* (quoting F. Dickerson, *Psychological Counseling for Law Students, One Law School's Experience*, 37 J. Legal Ed. 82, 89–90 (1987)). In a survey of approximately 10 percent of American law school students, 41 percent responded that if they suffered from a substance-abuse problem, they would seek assistance from a law school or university substance-abuse program if they were assured that bar officials would not have access to the information. *Report* at 9–10 (citing *Report of the AALS Special Committee on Problems of Substance Abuse in the Law School*, 44 J. Legal Ed. 35, 55 (1994)). Thus, one could conclude that the inclusion of questions such as No. 26 and No. 29 may actually prevent a person in need of treatment from seeking assistance. *Report* at 10. It is significant that the master pointed out that because the practice of law is a stressful profession, inquiries such as question Nos. 26 and 29 may discourage future bar applicants from taking advantage of opportunities to learn coping strategies for stress before being admitted to the bar. *Report* at 11.

Although drug addiction constitutes an impairment under the ADA, a public entity may deny licensing in most cases if an addict is engaged in the current and illegal use of

drugs. *Report* at 3. Current use is defined as the illegal use of controlled substances that has occurred recently enough to justify a reasonable belief that a person's drug use is current or that continuing use constitutes a real and ongoing problem. *Id.* at 11. We concur with the master's conclusion that to the extent that a question inquires into the current and illegal use of drugs, the ADA is not violated. *Report* at 6. Thus, we deem it appropriate that the bar application inquire whether an individual is engaged in the current use of illegal drugs, as in question No. 27 on the application.

### Conclusion

This Court has stated that "the ultimate goal of the committee is to secure to the public competent counsel while protecting the individual applicant from unnecessary intrusions into his or her zone of privacy." *In re Petition and Questionnaire, Rhode Island Bar*, 658 A.2d at 896. The committee, however, must carry out its inquiry into an applicant's background within the constraints imposed by the ADA.

We fully recognize the dilemma that these competing demands place upon the committee. In order to protect the public from incompetent counsel, the committee must obtain information sufficient to make a valid judgment in regard to the character and the fitness of applicants to the bar. Clearly, it can be argued that the master's recommended questions provide little or no relevant information about behavior that might translate to an inability to practice law. Nevertheless, the committee's investigation must afford to applicants the protections guaranteed under the ADA and preserve the privacy rights of all applicants.

Therefore, after careful review of the report and the documents of the amici, this Court instructs that question Nos. 26 and 29, as proposed by the Special Master, be adopted by the committee. Those questions will now read as follows:

"Question 26: Are you currently using narcotics, drugs, or intoxicating liquors to such an extent that your ability to practice law would be impaired? Yes ___ No ___

"'Currently' means recently enough so that the condition could reasonably be expected to have an impact on your ability to function as a lawyer.

"'Ability to practice law' is to be construed to include the following:

(a) The cognitive capacity to undertake fundamental lawyering skills such as problem solving, legal analysis and reasoning, legal research, factual investigation, organization and management of legal work, making appropriate reasoned legal judgments, and recognizing and resolving ethical dilemmas, for example[;]

(b) The ability to communicate legal judgments and legal information to clients, other attorneys, judicial and regulatory authorities, with or without the use of aids or devices; and

(c) The capability to perform legal tasks in a timely manner."

"Question 29: Are you currently suffering from any disorder that impairs your judgment or that would otherwise adversely affect your ability to practice law. Yes ___ No ___ "

We have carefully considered the Additional Proposed Questions and Further Recommendations set forth in the report as well as the suggestions made by the ACLU and the committee. We decline to direct the inclusion of these additional proposals.