**Amparo CAMPOS, et al., Plaintiffs,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, et al., Defendants.**

**No. 98–2231–CIV.**

United States District Court, S.D. Florida.

December 9, 1998.

---

JoNel Newman, Florida Justice Institute, Inc., Miami, FL, Charles F. Elsesser, Jr., Florida Legal Services, Inc., Miami, FL, Cheryl Little, Joan Friedland, Cheryl Little, Rebecca Sharpless, Florida Immigrant Advocacy Center, Miami, FL, for plaintiffs.

Dexter Lee, Assistant United States Attorney, Miami, FL, Frank Hunger, Assistant Attorney General/Civil Division, office of Immigration Litigation, Washington, DC, for defendants.

## ORDER DENYING MOTION TO DISMISS

GOLD, District Judge.

The named plaintiffs are poor, disabled, legal permanent residents who are attempting to become naturalized United States citizens. They claim that all but two of them were denied citizenship because the INS refused their requests for medical waivers and, because of their disabilities, they were unable to pass the English and Civics requirements of the Immigration and Naturalization Act (INA), 8 U.S.C. section 1423. Plaintiffs filed this class action contending that the INS, as a matter of practice and policy, refuses to evaluate requests for medical waivers as required by statute and its own regulations and guidelines; it evaluates all applications for medical waivers in a standardless, totally arbitrary and idiosyncratically capricious manner; and it refuses to inform applicants of the reasons their requests were denied or even the standards used to deny them. According to the plaintiffs, defendants' systematic practice and policy of violating the statute and regulations is unlawful under the INA, the Freedom of Information Act, the Administrative Procedures Act, and the Due Process Clause of the Fifth Amendment.

On October 16, 1998, the court entered an order granting the plaintiffs' motion for a preliminary injunction prohibiting the defendants from scheduling the final citizenship interviews for two of the plaintiffs, Angela Rodriguez and Josefina Lopez, until the court has ruled on the merits of the class action complaint. This case is now before the court on the defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## I. SUBJECT MATTER JURISDICTION

■ The defendants' first argument is that the court lacks subject matter jurisdiction. But this argument was considered and specifically rejected by this court after the defendants raised it in opposition to plaintiffs' motion for preliminary injunction. The order granting preliminary injunction set forth the relevant cases on the jurisdictional issue and explained this court's reasoning.

The plaintiffs challenge the INS's "current practices and policies in the Miami District for evaluating requests for medical waiver of the English language and Civics portion of the naturalization exam." The complaint alleges that these practices and policies deprive naturalization applicants of their statutory and constitutional rights. No challenge is made with respect to the merits of any individual INS determination. Consequently, the court finds that it has federal question jurisdiction to consider the plaintiffs' constitutional and statutory challenges to the defendants' practices and policies concerning the evaluation of medical waivers. *See McNary v. Haitian Refugee Ctr., Inc.,* 498 U.S. 479, 111 S.Ct. 888, 896, 112 L.Ed.2d 1005 (1991) (a district court has federal question jurisdiction to hear constitutional and statutory challenges to INS procedures). The Eleventh Circuit has repeatedly held that district courts have jurisdiction to review allegations of systematic abuses by INS officials. In *Haitian Refugee Center v. Smith,* 676 F.2d 1023 (5th Cir. Unit B 1982), the appellate court affirmed a district court's finding that it had jurisdiction to review a complaint which challenged the INS's procedures for processing asylum requests and addressed "matters alleged to be part of a pattern or practice by immigration officials to violate the constitutional rights of a class of aliens." Such matters were held to be "independently cognizable in the district court under its federal question jurisdiction." *Id.* at 1033. This conclusion was reaffirmed in *Jean v. Nelson,* 727 F.2d 957 (11th Cir.1984) (en banc), where the court explained that to postpone "judicial resolution of a disputed issue that affects an entire class of aliens until an individual petitioner has an opportunity to litigate it" would undermine Congress' intent to eliminate delay and procedural redundancy in immigration matters. *Id.* at 980.

For the reasons stated in the order granting preliminary injunction, defendants' motion to dismiss based on Rule 12(b)(1) is denied.

## II. FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

■ The defendants' next contention is that even if this court finds that it has subject matter jurisdiction, it should nonetheless dismiss based on the plaintiffs' failure to exhaust administrative remedies. But this argument too was fully addressed and rejected in this court's order granting preliminary injunction, in reliance on *Haitian Refugee Center, Inc. v. Nelson,* 872 F.2d 1555 (11th Cir.1989).

*Haitian Refugee Center, Inc. v. Nelson,* 872 F.2d 1555 (11th Cir.1989) . . . involved a challenge to INS policies and practices in connection with applications for temporary residence. There the INS had argued that the plaintiffs' claims were barred by an exhaustion requirement imposed by statute as well as a judicially-created exhaustion requirement. Rejecting the INS's statutory exhaustion argument, the court held that where the plaintiffs challenged the adequacy of the procedures employed by the INS in processing their applications, rather than seeking substantive review of any individual ruling respecting their status, the exhaustion requirement imposed by section 1105a had no bearing on the district court's jurisdiction. As for the judicially-created exhaustion requirement, the court reasoned that exhaustion is not required if the administrative remedy would not provide relief commensurate with the claim. *Id.* at 1560. Where the nature of plaintiffs' constitutional challenge of INS procedures is such that relief at the administrative review level is unlikely and the chances are remote that the INS would respond positively to an individual's constitutional challenges to it procedures, the exhaustion doctrine is not a bar to the district court's assertion of jurisdiction. *Id.* (citing *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) and *Haitian Refugee Center v. Smith,* 676 F.2d at 1034 (exhaustion of remedies not required because case involved a constitutional challenge to procedures adopted by the INS for the processing of asylum claims).

In this case, the only administrative remedy available to Lopez and Rodriguez is a request for a hearing (also referred to as an "appeal") of the ultimate denial of citizenship. 8 C.F.R. § 336.2. This appeal is heard by another staff officer at the Miami District Office of at least similar grade to the officer who initially denied the claim. *Id.* That appeal process currently takes one year to eighteen months. Lopez and Rodriguez could only *thereafter* seek judicial review of the INS officer's decision on appeal. 8 U.S.C. § 1421(c). Furthermore, because the plaintiffs have never received meaningful notice regarding the deficiency of the original claim, the appeals will likely employ the same unknown criteria used in making the initial determination. Based on Eleventh Circuit precedential authority, as stated above, the court finds that the statutory exhaustion requirement is inapplicable in this case. Accordingly, for the reasons stated in the order granting preliminary injunction, this case will not be dismissed on the basis that the plaintiffs failed to exhaust their administrative remedies.

### III. LEGAL STANDARD FOR MOTION TO DISMISS

Dismissal of a complaint under Fed. R.Civ.P. 12(b)(6) is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Blackston v. Alabama,* 30 F.3d 117, 120 (11th Cir.1994) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). On a motion to dismiss, the court must accept all the alleged facts as true and find all inferences from those facts in the light most favorable to the plaintiff. *See, e.g., Cruz v. Beto,* 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); *Hunnings v. Texaco, Inc.,* 29 F.3d 1480, 1483 (11th Cir.1994). The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low. *Ancata v. Prison Health Servs., Inc.,* 769 F.2d 700, 703 (11th Cir.1985); *Jackam v. Hosp. Corp. of Am. Mideast,* 800 F.2d 1577, 1579 (11th Cir.1986). The complaint should not be dismissed for failure to state a claim upon which relief can be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Sea Vessel, Inc. v. Reyes,* 23 F.3d 345, 347 (11th Cir.1994). A pro se complaint is held to standards even less stringent than pleadings drafted by lawyers. *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

But to survive a motion to dismiss, a plaintiff may not merely "label" his claims. *Blumel v. Mylander,* 919 F.Supp. 423, 425 (M.D.Fla.1996). Courts must liberally construe and accept as true allegations of fact in the complaint and inferences reasonably deductible therefrom, but need not accept factual claims that are internally inconsistent, facts which run counter to facts of which the court can take judicial notice, conclusory allegations, unwarranted deductions, or mere legal conclusions asserted by a party. *Ellen S. v. The Florida Bd. of Bar Examiners,* 859 F.Supp. 1489, 1492 (S.D.Fla.1994); *Olpin v. Ideal Nat'l Ins. Co.,* 419 F.2d 1250, 1255 (10th Cir.1969). When, on the basis of a dispositive issue of law, no construction of the factual allegations of a complaint will support the cause of action, dismissal is appropriate. *Executive 100, Inc. v. Martin County,* 922 F.2d 1536 (11th Cir.1991); *Powell v. United States,* 945 F.2d 374 (11th Cir. 1991); *Marshall County Bd. Of Educ. v. Marshall County Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir.1993).

### IV. PLAINTIFFS' CLAIMS UNDER THE INA

Pursuant to 8 U.S.C. § 1423(b)(1), Congress has provided for a medical waiver of the English and Civics portion of the naturalization exam for persons who are ill or severely handicapped. The INS has issued regulations and supplemental policy guidance on the procedural mechanics of the disability waiver exemption. *See* 8 C.F.R. § 312.2(b)(2) (1998); *see also* INS Supplemental Policy Guidance for Field Offices. In this case, the complaint alleges that the defendants have failed to comply with the express Congressional mandate of 8 U.S.C. § 1423(b)(1), or its implementing regulations or interpretations and have acted arbitrarily and capriciously in denying medical waivers.

The defendants argue that this claim should be dismissed because neither 8 U.S.C. § 1423(b)(1) nor its implementing regulations give rise to a cause of action for violation of these provisions. Defendants further argue that nothing in the statute or implementing regulations requires the INS to engage in, or refrain from engaging in, the activities that form the gravamen of the complaint. After a review of the relevant case law, however, the Court finds that the defendants' argument is not persuasive.

In 1976, Congress amended 28 U.S.C. section 1331(a) to eliminate the specific amount in controversy requirement for bringing a lawsuit against the United States, its agencies, officers, or employees in their official capacities. This amendment was interpreted as an obvious attempt by Congress to expand the scope of federal question jurisdiction over agency decisions. *Califano v. Sanders*, 430 U.S. 99, 106, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). Consistent with *Califano v. Sanders*, the Eleventh Circuit has held that when plaintiffs challenge the policies and practices of the INS, alleging that the policies and practices deprive them of their statutory rights, such deprivations constitute wrongs independently cognizable in the district court under federal question jurisdiction. *Haitian Refugee Center, Inc. v. Nelson*, 872 F.2d 1555 (11th Cir.1989); *see also Haitian Refugee Center v. Smith*, 676 F.2d 1023 (5th Cir. Unit B 1982) (matters alleged to be part of a pattern or practice by immigration officials to violate the constitutional rights of a class of aliens held to be "independently cognizable in the district court under its federal question jurisdiction."). Accordingly, the plaintiffs' claim that local INS policies and practices deprive them of their statutory rights granted by the INA is a claim that may be maintained independently in the district court under federal question jurisdiction. The motion to dismiss plaintiffs' first claim for relief is denied.

## VI. PLAINTIFFS' CLAIM UNDER THE APA

■ Plaintiffs' second claim is that the defendants have violated the Administrative Procedures Act, 5 U.S.C. sections 701 et seq. Defendants seek dismissal of this claim arguing that the APA does not apply to immigration proceedings because the APA has been superseded by the INA and therefore the plaintiffs' exclusive remedy under the INA. But the defendants have not cited any case which has held that the INA expressly superseded the APA. For the following reasons, this Court declines to find that the INA supersedes the APA.

■ Courts have consistently held that the INS, under the supervision of the Department of Justice, is an "agency" within the terms of the APA. *E.g., Koden v. United States Dep't of Justice*, 564 F.2d 228 (7th Cir.1977); *Blackwell College of Business v. Attorney General*, 454 F.2d 928 (D.C.Cir. 1971); *see generally* 2 Am.Jur2d *Administrative Law* § 26 (1994). The APA governs "any administrative unit with substantial independent authority in the exercise of specific functions." *Koden*, 564 F.2d at 232. Its primary function is to regulate the processes of rule making and adjudication. *Id.* Exemptions from the APA are not to be lightly presumed in light of subsection 12 of the Act which mandates that modifications must be express. *Marcello v. Bonds*, 349 U.S. 302, 309, 75 S.Ct. 757, 99 L.Ed. 1107 (1955).

Defendants cite *Marcello v. Bonds*, 349 U.S. 302, 75 S.Ct. 757, 99 L.Ed. 1107 (1955) in support of their argument that the APA was superseded by the INA. But *Marcello* held only that the APA did not apply to INS deportation proceedings. In reaching this conclusion, the Court relied heavily on the unique history of deportation proceedings, which reflects Congress' long-held intent that deportation proceedings not be governed by the APA. *Id.* at 306–307, 75 S.Ct. 757. The Court reasoned that Congress did not intend to reverse itself through passage of the 1952 Immigration Act. To the contrary, through the 1952 legislation, Congress adapted the APA to the needs of the deportation process, creating a complete and distinct set of procedures. *Marcello*, 349 U.S. at 309, 75 S.Ct. 757; *Lane v. United States Dep't of Agriculture*, 120 F.3d 106, 110 (8th Cir.1997). Moreover, the legislative history of the 1952 Immigration Act made clear that the APA was not to apply to deportation proceedings. Consequently, in light of the historic background of deportation proceedings, the 1952 Immigra-

tion Act's laborious adaptation of the APA to deportation proceedings, the legislative history of the 1952 Immigration Act, and language in the Immigration Act specifying that the methods described therein would be the sole and exclusive procedure for deportation proceedings, the Court held that the Immigration Act expressly superseded the hearing provisions of the APA with respect to deportation decisions.

The defendants make no argument that naturalization proceedings, like deportation proceedings, have traditionally been exempted from the APA. Nor do they argue that the legislative history of the INA reflects an intent by Congress to exempt the APA from naturalization proceedings. Defendants cannot cite to language in the INA stating that the procedure described therein is the sole and exclusive procedure to be used in naturalization proceedings. Consequently, this Court declines to find that the APA has been superseded by the INA in naturalization proceedings. This finding is consistent with the decisions of other courts in this district which have permitted challenges to INS practices and procedures to be brought under the APA. For example, in *Jean v. Nelson,* 727 F.2d 957 (11th Cir.1984), the plaintiffs' action challenging the practices of local immigration officials was brought under the APA. *See also, Louis v.. Nelson,* 544 F.Supp. 1004, 1006 (S.D.Fla.1982) (district court ordered the INS to comply with rulemaking procedures of the APA).

Other district courts have permitted plaintiffs to bring claims under the APA to challenge INS practices and procedures with respect to the same medical waiver provisions at issue in this case. *See e.g., Chow v. Meissner,* 1997 WL 285066 (N.D.Cal.1997) (disabled individuals seeking naturalization brought claim under APA against INS for its failure to publish rules relating to section 312 waivers). *See also, Sze v. INS,* 1997 WL 446236 (N.D.Cal.1997) (plaintiffs brought APA claim against INS contending that delays in processing naturalization applications were unreasonable). Accordingly, the defendants' motion to dismiss the APA claim is denied.

## VII. PLAINTIFFS' CLAIM UNDER THE FOIA

■ The complaint alleges that the defendants have violated the Freedom of Information Act (FOIA), 5 U.S.C. § 552, by unlawfully using secret standards that are in actuality substantive rules which have not been published in the Federal Register and have refused to make these rules available for public inspection. The INS contends that this claim must be dismissed because the plaintiffs have not alleged that the agency "improperly withheld agency records." It also asserts that the plaintiffs cannot obtain injunctive relief under the FOIA. The Court disagrees.

■ The Freedom of Information Act was enacted to open the administrative process to the scrutiny of the press and the general public. *Federal Labor Relations Authority v. United States Dep't of Defense,* 977 F.2d 545, 547 (11th Cir.1992). By its terms, the FOIA applies to every agency in the federal government, including the INS. *Crooker v. Office of Pardon Attorney,* 614 F.2d 825 (2d Cir.1980). The purpose of the FOIA is to allow public access to official information unnecessarily shielded from the public view. *Cochran v. United States,* 770 F.2d 949, 954 (11th Cir.1985). The statute is broadly conceived, seeking to permit access to official information long shielded unnecessarily from public view and attempting to create a judicially enforceable public right to secure such information from possibly unwilling official hands. *Pacific Molasses Co. v. NLRB,* 577 F.2d 1172, 1178 (5th Cir.1978). The disclosure requirements of the FOIA are to be construed broadly and its exemptions narrowly. *Cochran,* 770 F.2d at 954.

■ A federal district court has jurisdiction under the Freedom of Information Act to enjoin an agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. 5 U.S.C. § 552(a)(4)(B). The existence of injunctive relief pursuant to 5 U.S.C. § 552(a)(4)(B) does not mean that subsection (a)(4)(B) is the exclusive method for enforcing the Act's disclosure requirements, nor does that provision limit the inherent equitable powers of a dis-

trict court to fashion injunctive relief. *Renegotiation Bd. v. Bannercraft Clothing Co.,* 415 U.S. 1, 18, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974). The district court is the enforcement arm of the FOIA and the full scope of a district court's injunctive powers has not yet been fully delineated. *Id.* at 18, 94 S.Ct. 1028. Courts have utilized their injunctive powers to impose an injunction compelling an agency to comply with the recordkeeping requirements of the Federal Records Act. *See, e.g., American Friends Serv. Committee v. Webster,* 485 F.Supp. 222 (D.D.C.1980). Moreover, because a complete remedy for non-publication is publication, a court can compel an agency to publish a regulation under the FOIA. *See The Effectiveness of an Unpublished Rule,* 95 Ann.Surv.Am.L (1995). In light of the authority stated above, the Court finds that the relief sought by the plaintiffs in this case may be available under the FOIA.

■ The Court agrees with the defendants, however, that a prerequisite to suit under the FOIA is that the plaintiff must have made a request to the agency. *Ray v. United States Dep't of Justice,* 908 F.2d 1549 (11th Cir.1990), *reversed on other grounds,* 502 U.S. 164, 112 S.Ct. 541, 116 L.Ed.2d 526. It is not clear from the complaint whether there was a request of any kind made to the agency. It may be that at this early stage in the proceedings the facts on this issue are not yet fully developed. Accordingly, defendants' motion to dismiss the FOIA claim is denied as premature. Defendants may again move to dismiss this claim after appropriate discovery has been conducted.

## VIII. PLAINTIFFS' DUE PROCESS CLAIMS

Plaintiffs' sixth claim for relief alleges that the defendants have violated plaintiffs' Fifth Amendment right to substantive and procedural due process. The substantive due process claim asserts that the INS has consciously maintained a "policy and practice of denying requests for medical waivers so arbitrarily and capriciously, lacking any standards for determination other than the whims and prejudices of the individual decision makers so as to violate the substantive due process rights of the plaintiffs and members of the plaintiff class." The procedural due process claim is grounded on the defendants' alleged failure to follow its own procedures and regulations. It alleges that the defendants "have maintained a practice and policy of denying requests for medical waivers without providing the applicant of any notice of the deficiencies, notice of the standards used or notice of the basis for denial." Plaintiffs contend that as a result of these due process violations, they have been unlawfully deprived of a medical waiver of the English and Civics portion of the naturalization examination.

■ As an initial matter, it is clear that the plaintiffs, as legal permanent residents, have both substantive and procedural due process rights. The Constitution protects the rights of aliens to due process and equal protection. *Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). Even illegal aliens enjoy the due process protections of the Fifth Amendment. *Mathews v. Diaz,* 426 U.S. 67, 77, 96 S.Ct. 1883, 1890, 48 L.Ed.2d 478 (1976). It is now well established that any person present in the United States is entitled to equal justice before the law, including procedural protections in conjunction with any deprivation of liberty, and freedom from invidious discrimination. *See* C. Antieau, 1 *Modern Constitutional Law* §§ 9:25–9:27 (1969 & Supp.1991).

■ Immigration laws have long distinguished between those aliens who have come to the United States seeking admission and those who are within the country after an entry, irrespective of its legality. In the latter instance, the Court has recognized additional rights and privileges not extended to those in the former category. *Leng May Ma v. Barber,* 357 U.S. 185, 187, 78 S.Ct. 1072, 2 L.Ed.2d 1246 (1958) (quoting *Shaughnessy v. Mezei,* 345 U.S. 206, 212, 73 S.Ct. 625, 97 L.Ed. 956 (1953)). Aliens who seek admission to the United States ("excludable aliens") have no procedural due process rights regarding admission. *Landon v. Plasencia,* 459 U.S. 21, 32, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982); *Barrera–Echavarria v. Rison,* 44 F.3d 1441, 1449 (9th Cir.1995). Excludable aliens also lack substantive due process rights to be free from detention. *Barrera–Echavarria,* 44 F.3d at 1450. Con-

versely, legal aliens subject to deportation ("deportable aliens") have procedural and substantive due process rights. *See Landon,* 459 U.S. at 25–27, 103 S.Ct. 321, 74 L.Ed.2d 21. The extent of those substantive due process rights extends at least to the rights enunciated in the Fifth Amendment mandating that "no person shall ... be deprived of life, liberty, or property without due process of law." *Plyler v. Doe,* 457 U.S. 202, 210, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982) (stating that Fifth Amendment due process protections are accorded to all persons within territorial boundaries of United States, not just citizens). Accordingly, the plaintiffs, as legal permanent residents, have both substantive and procedural due process rights.

■■■■■ **Substantive Due Process.** The Fifth Amendment provides that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law...." U.S. Const., Amend. V. The Fifth Amendment's guarantee of "due process of law" includes a substantive component, which forbids the government from infringing on certain fundamental liberty interests, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest. See, e.g., *Collins v. Harker Heights,* 503 U.S. 115, 125, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992); *Bowers v. Hardwick,* 478 U.S. 186, 191, 106 S.Ct. 2841, 2844, 92 L.Ed.2d 140 (1986). "Substantive due process" analysis must begin with a careful description of the asserted right, because the doctrine of judicial self-restraint requires courts to exercise the utmost care whenever asked to break new ground in this field. *Reno v. Flores,* 507 U.S. 292, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993); *Collins,* 503 U.S. at 125, 112 S.Ct. at 1068; *see also Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538–539, 105 S.Ct. 1487, 1491–92, 84 L.Ed.2d 494 (1985) (the first step is to identify a property or liberty interest entitled to due process protections). Recognized fundamental rights include those created by the Constitution, most rights enumerated in the Bill of Rights, and certain unenumerated rights, such as the right to privacy. *Washington v. Glucksberg,* 521 U.S. 702, 117 S.Ct. 2258, 2267, 138 L.Ed.2d 772 (1997). Liberty interests are protected under the Due Process Clause of the Fifth Amendment. Although the Su-

preme Court has not attempted to define a liberty interest, the right is not limited to freedom from bodily restraint. Liberty interests include the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally "to enjoy those privileges long recognized ... as essential to the orderly pursuit of happiness by free men." *Meyer v. Nebraska,* 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923). But courts should exercise great resistance to expanding the substantive reach of the Due Process Clause of the Fifth Amendment, particularly if it requires redefining the category of rights deemed to be fundamental. *Bowers,* 478 U.S. at 195, 106 S.Ct. at 2846. In this case, the defendants argue, and the Court agrees, that the plaintiffs have failed to allege the violation of a clearly established fundamental right.

■■■■■ Plaintiffs allege that the defendants arbitrarily and capriciously deny their medical waiver requests. Perhaps implied in this statement is the contention that they are being deprived of a fundamental right to naturalize. But the plaintiffs have not cited to, nor has this Court discovered, authority for the proposition that an individual has a fundamental right to become an American citizen. Case law suggests otherwise. "An alien who seeks political rights as a member of this Nation can rightfully obtain them only upon terms and conditions specified by Congress." *Immigration and Naturalization Serv. v. Pangilinan,* 486 U.S. 875, 884, 108 S.Ct. 2210, 100 L.Ed.2d 882 (1988). Medical waivers are government-created exceptions to the statutory requirements for naturalization. In the Eleventh Circuit, a government or state-created right is not a fundamental right implicating substantive due process. Non-legislative deprivations of state-created rights do not invoke substantive due process protection. *DeKalb Stone, Inc. v. County of DeKalb,* 106 F.3d 956, 959–60 (11th Cir.1997); (citing *McKinney v. Pate,* 20 F.3d 1550 (11th Cir.1994) (*en banc*). Government-created rights are protected by procedural, not substantive due process. *Id.* In light of *DeKalb* and *McKinney,* the defendants correctly ar-

**1348**

gue that the plaintiffs in this case cannot maintain a substantive due process claim which is based on a deprivation of a fundamental right.

■ Nonetheless, there is an alternative substantive due process test whereby a violation can be found if the governmental action in question "shocks the conscience" of federal judges. *See McKinney v. Pate,* 20 F.3d 1550, 1556 n. 7 (11th Cir.1994) (citing *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952); *see also* David H. Armistead, *Substantive Due Process Limits on Public Officials' Power to Terminate State–Created Property Interests,* 29 Ga. L.Rev. 769 (Spring 1995). A review of Supreme Court cases, however, suggests a strong reluctance by the Court to find substantive due process violations for arbitrary and capricious interference with a government-created right, particularly where there is an alternative remedy available. *E.g., Regents of the University of Michigan v. Ewing,* 474 U.S. 214, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985); *see also* Rosalie B. Levinson, *Protection Against Government Abuse of Power: Has the Court Taken the Substance Out of Due Process,* 16 Dayton L.Rev. 313 (1991). Consequently, the court finds that the allegations of the complaint in this case are not sufficiently egregious to implicate substantive due process.

Defendants' motion to dismiss plaintiffs' substantive due process claim is granted on the authority of *DeKalb Stone, Inc. v. County of DeKalb,* 106 F.3d 956 (11th Cir.1997) and *McKinney v. Pate,* 20 F.3d 1550 (11th Cir.1994).

■ **Procedural due process.** Procedural due process is wider in scope than substantive due process. *Plyler v. Moore,* 100 F.3d 365 (4th Cir.1996). It is well established that it is a denial of due process for any government agency to fail to follow its own regulations providing for procedural safeguards to persons involved in adjudicative processes before it. *Government of Canal Zone v. Brooks,* 427 F.2d 346, 347 (5th Cir.1970). INS regulations are adopted pursuant to a federal statute, are binding on the agency, and assure a petitioner a fair hearing. *Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954) (reversing a

deportation order of the Immigration and Naturalization Service which was entered in contravention of the agency's regulations governing the deportation hearing); *Bridges v. Wixon,* 326 U.S. 135, 152, 65 S.Ct. 1443, 1452, 89 L.Ed. 2103, 2114 (1945) ("The rules are designed to protect the interests of the alien and to afford him due process of law.").

■ Assuming, as it must, the truth of plaintiffs' allegations that the INS failed to comply with its own regulations governing medical waivers, and the prejudicial effect this failure has had on the plaintiffs' naturalization proceedings, the court finds that defendants' motion to dismiss the plaintiffs' procedural due process claim should be denied. *See DeKalb Stone, Inc. v. County of DeKalb .*

### IX. CONCLUSION

Defendants' motion to dismiss the plaintiffs' complaint is denied, with the exception that the substantive due claim is dismissed on the authority of *DeKalb Stone, Inc. v. County of DeKalb,* 106 F.3d 956 (11th Cir. 1997), and *McKinney v. Pate,* 20 F.3d 1550 (11th Cir.1994).